## ALEXANDER PRIDE & *al. versus* JAMES LUNT.

The like rules of construction must be applied to levies as other conveyances.

The intention of the parties, if possible, must be carried into effect.

Where a conveyance declares a fact, as that the land adjoins a river or a street, parol evidence cannot be received to prove that it does not; unless the description contains a latent ambiguity, or be found false, and therefore to be rejected.

Where the commencement of a levy is described to be at a stake, at " the westerly corner of land set off to William Cobb," and that corner can be ascertained, parol evidence is inadmissible to prove that in fact the stake referred to, stood at a different place.

THIS was an action of ejectment, wherein the plaintiff demands seizin and possession of a certain strip of land adjacent to a tract set off on execution to one William Cobb, Feb. 4, 1828, as the property of Daniel Lunt, deceased. The defendant pleaded the general issue. To sustain the action, the plaintiff introduced a copy of the Cobb levy, in which the same was described as follows :

" Beginning at a stump standing in the north-easterly corner, near a brook, on the north-easterly side of the road leading from Pride's Bridge, so called, to Windham, and lying between Zachariah B. Bracket's house and Bartholomew Lunt's house, thence from said stump south 70 degrees west, 48 rods, to a stake in the north-easterly side of said road, thence by said road north twenty-nine degrees west, 20 rods, thence on said road north 22½ degrees west, twenty-four rods, to a stake and stone — thence north 70 degrees east, 60 rods, to a stake and stone and a brush fence — thence by said brush fence south, 12 degrees east, 45½ rods, to the first bounds mentioned — containing fourteen acres, more or less."

The plaintiffs then introduced a copy of the levy of an execution in favor of *John P. Boyd, Adm'r.* v. *Daniel Lunt,* by which the following described premises were set off to the plaintiff in that suit.

" Beginning on the easterly side of the County road leading from Portland to Windham, *at a stake at the westerly corner of land set off to William Cobb,* Feb. 4, 1828, thence north

70 degrees east, 59½ rods, to a brush fence — thence by said fence N. 11 degrees W., by land of Z. B. Bracket and Benj. Walker, 41 rods, 22 links, to underwitted road, thence south-westerly by underwitted road, 49 rods, to a stone by the corner of the fence near the barn, thence south 31 degrees E., six rods, to a stake and stone, thence south 59 degrees W., 15 rods, 10 links, to a stake — thence north 31 degrees W., 6 rods, to underwitted road, thence south-westerly by said road, 9 rods, to the county road leading from Windham to Portland, thence by said road south 27 degrees E., 15 rods, 2 links, to the stake first mentioned, containing 10¾ acres and twelve rods, more or less."

Also the deeds of the grantees under the levy, bringing the estate acquired by the levy in to the plaintiffs.

The plaintiffs then called Benjamin Larrabee, who testified that when the Cobb levy was made, he was one of the appraisers, and surveyed the land set off — that he run it, unless some mistake occurred in the manner described in the levy — that the appraisers intended to be governed' by fixed monuments — that during the present month he had re-surveyed the land — and also the land set off by the Boyd levy — that he was unable to find any of the monuments, which governed him in making the Cobb levy in 1828, except the stump in the exterior corner first begun at, and the stake on the road which formed the second corner — that he did not find either of the two next side boundaries of stake and stone in said road, described in said levy, and the latter of which formed the corner of the levy — that he also at the same time, surveyed the land set off under the Boyd levy, but could not find any of the monuments described by the appraisements except upon the end line formed by the underwitted road, one of which was the corner monument upon said road at its junction with the county road — that according to his re-survey, by following from the two known corner monuments of the Cobb levy, the courses and distances described in said Cobb levy, in the absence of all other original monuments — and then following in like manner from the two known corner monuments on the

underwitted road, of the Boyd levy, in the absence of all other original monuments, and going by the length of line only and not regarding any expression in the levies signifying that they adjoined, a gore of land would be left between the two levies of about six rods wide, in length on the county road, and extending across the width of the two levies to the brush fence, terminating there in nearly a point.

There was also other evidence, tending to show that the stake and stone supposed and taken by the surveyor and appraisers in making the Boyd levy as the stake and stone that formed the corner boundary of the said Cobb levy, were not the true corner of the Cobb levy, but were another and different boundary, six rods distant from the true corner boundary of the Cobb levy.

The defendant, on his part, introduced deeds vesting in himself the whole title derived from the Cobb levy — also the title of all that portion of the debtor's estate within said exterior boundaries, if any existed, not covered by the two levies.

Upon this evidence, the counsel for the defendant moved the Court to direct the jury, that if they were, from the evidence in the case, satisfied that the surveyor and appraisers, in making the Boyd levy, by mistake run from some other boundary than the true boundary of the Cobb levy, and in consequence thereof the Boyd levy did not in fact adjoin the land actually set off under the Cobb levy, but left a gore or strip of land between the two levies, it would be competent for them to find that fact by their verdict, and negative the plaintiff's title to such gore, notwithstanding the description of the Boyd levy as commencing " at a stake at the westerly corner" of said Cobb land — and that in the absence of known monuments, the length of line must govern — and that it was as competent for the jury to find a mistake to have been made in the surveyor's description of the actual monuments by which he run his lines, as in his description of the lines actually run by him — and to find where the actual monuments run by him were located, if satisfied that a mistake had been made in the description of them by the levy.

But SHEPLEY J., who presided at the trial, overruled this motion, and instructed the jury that the language of the Boyd levy, describing the stake and stone for its first corner boundary as being at the corner of the Cobb levy, together with the fact that the courses in both levies were on the same line, was conclusive, and it was not competent for them to find that the two levies, as actually run out, did not join — that they were bound to find the Boyd levy to commence at the point where they should be satisfied was the true corner of the Cobb levy, if that could, from any monument or line laid down at the time on the face of the earth, be ascertained — that if not so ascertained, the distance of the lines named in the levies, would, as a rule of law, determine their extent — that such rule was not so absolutely binding, if it was clearly proved that there was a mistake made in measuring the last line of the Boyd levy, as to preclude them from extending that line to the point where the Cobb levy terminated: that if no such mistake were proved, the lines must be made to adjoin by a division of the surplus, giving to each a proportion of the intervening land, according to his length of line.

The jury returned a verdict for the plaintiff.

*F. O. J. Smith*, for the defendant.

The instruction requested should have been given. The jury should have been permitted to find where the true boundary of the Boyd levy was — and that the stake and stone from whence they commenced were not in the corner of the Cobb levy. *Heaton* v. *Hodges*, 14 Maine R. 70; *Proprietors of Kennebec Purchase* v. *Tiffany*, 1 Greenl. 225; *Brown* v. *Gay*, 3 Greenl. 129. The mere intent that the two levies should adjoin, is not sufficient. They must join in fact.

The monuments on the inside lines having perished, it is as though none existed. Courses and distances from such monuments as can be found, are all that the jury could be governed by. *Pernam* v. *Wead*, 6 Mass. R. 131; *Gerrish* v. *Bearce*, 11 Mass. R. 193; *Howe* v. *Bass*, 2 Mass. R. 380; *Aiken* v. *Sanford*, 5 Mass. R. 494; *Loring* v. *Norton*, 8 Greenl. 68; *Call* v. *Barker*, 3 Fairf. 325. This rule governs, although it

leaves a gore between the lots.    1 Greenl. 225 ; 14 Maine R. 71, before cited.

The instruction given shifted the issue from the location of the Boyd levy to that of the Cobb.    But the location of the Cobb levy threw no light on that question, the inside line being gone.    The whole error lies in assuming that the line of the Cobb levy is a known monument.    Allow the plaintiff to have his certain monuments, and neglect those of the defendant, and the cause is his — and not otherwise.

*Longfellow & Deblois,* for the plaintiff.    The Cobb levy was first to be located.    Two monuments were known, and from those, by course and distance, the inside lines could be ascertained.    The defendant adjoins upon those inside lines, so that no gore exists.    Known monuments should govern, rather than course or distance.    *Howe* v. *Bass,* 2 Mass. R. 380 ; *Aiken* v. *Sanford,* 5 Mass. R. 494 ; *Pernam* v. *Wead,* 6 Mass. R. 131 ; *Gerrish* v. *Bearce,* 11 Mass. R. 193 ; *Davis* v. *Rainsford,* 17 Mass. R. 207.

The opinion of the Court was delivered by

Shepley J. — The levy of an execution upon the lands of the debtor operating in this State as a statute conveyance, the like rules of construction are to be applied to it as to other conveyances.    *Waterhouse* v. *Gibson,* 4 Greenl. 230. The first of these requires, that the intentions of the parties should, if possible be carried into effect.    It is admitted in the argument to have been the intention, that the land set off to Boyd should adjoin that set off to Cobb ; but it is contended, that this should not prevent the introduction of proof by parol evidence, that such intention was not carried into affect, and that the stake referred to in the levy as standing at the corner of land set off to Cobb did not in fact stand there.    The general rule, that the monuments referred to in a deed may be established by parol evidence, is not questioned.    This case affords an example of its application.    Parol evidence must be received to prove the location of the road and of the lands set off to Cobb.    Such testimony does not contradict or vary the lan-

guage used in the conveyance; it only applies it. There may be two or more streams, trees, stakes, or other monuments, each conforming to the description in the deed. A latent ambiguity is there disclosed, and parol evidence may be received to explain it. If in attempting in this case to designate upon the earth the bounds named in the conveyance, it had been ascertained, that no land had been set off to Cobb, so much of the description though apparently clear, would have been found to be false; and it must have been rejected as in the case of Wing v. Burgis, 13 Maine R. 111. And parol proof might then have been admitted to prove the position of the stake. It would not have contradicted any thing, which could be regarded as a part of the deed. When a conveyance declares a fact, as that the land conveyed adjoins a river, or a street; parol evidence cannot be admitted to prove, that it does not, unless a latent ambiguity be found, or the allegation be found to be false and therefore rejected. When the monuments named in the conveyance, as in this case the road and the land set off to Cobb, are found to exist as decribed, to allow the land conveyed to be separated from either of them by parol evidence would be to give a preference to that, which is uncertain, dependent on memory, and subject to change, over that which is clearly declared in writing and is of certain designation. "The westerly corner of land set off to William Cobb," was a monument named in the conveyance as the place where the stake stood, and it appears to have been named for the purpose of defining with certainty its position. Parol evidence might as properly be admitted to prove, that the tract of land set off to Boyd was not bounded in running the southwesterly line on the road as to separate the stake from the corner of the land set off to Cobb. In both cases the language used in the conveyance would be contradicted, and the conveyance itself be so far defeated. Should there be two monuments equally certain and permanent and alleged to be found at the same point, and it should appear in proof, that both existed, but not at the same point, a false description would be disclosed and it would become necessary to determine from other parts of the convey-

ance, which allegation was false and to be rejected. But where two monuments, one of certain, and one of uncertain location are stated to adjoin each other, the one of certain location must be regarded for the purpose of making the position of the other certain.

The conveyance in this case having declared, that the land set off to Boyd does adjoin that set off to Cobb, the parol evidence cannot be received to prove, that it does not.

*Judgment on the verdict.*