PRATT *versus* PIERCE.

In proving title to real estate by descent, a legal marriage may be established, by proof of facts from which it may reasonably be inferred.

When the fact of a marriage by a settled, ordained minister of the gospel has been proved, the legal presumption is, that it was done in accordance with the law.

The common law doctrine, that a disseizee of land could not convey, has been abrogated by statute.

A disseizee, if he have a right of entry, may convey.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding. WRIT OF ENTRY.

The controversy involved the title to seven acres of land described in the pleadings, being a part of lot No. 20.

In 1805, the land was conveyed to Hezekiah Wright, who, as was proved by a witness on the stand, was married, in 1810, to Charlotte Sewall, in Monmouth, in the county of Kennebec, by Rev. Dr. Gillett, who resided in Hallowell, and was then, and for many previous years had been a minister of the gospel, ordained and settled as pastor of the South Parish Church. And after that marriage the said Hezekiah and Charlotte lived together as husband and wife until the death of the husband, who died in 1815, leaving Hezekiah Hartley Wright his only son and sole heir. Hezekiah Hartley Wright died in 1840, leaving his mother, Charlotte Wright, his sole heir, who on Feb. 22, 1850, conveyed to the demandant all her right in lot No. 20.

The only compensation paid for that deed was the demandant's own bond, stipulating to pay her three hundred dollars, if her title should prove to be a valid one, in such suits as he would immediately bring to recover possession of the land.

The tenant was in possession, claiming through several successive conveyances, under a deed, made by a collector for the payment of taxes assessed in 1837. What warranty, if any, was contained in the collector's deed, the case does not show. To establish the tax title, it was necessary for the tenant to prove that the collector had advertised, in some

newspaper printed in the county, that the land was assessed and would be sold at auction for the taxes.

Upon this point, a witness testified that he had made search for a long time for a copy of a newspaper printed in Bangor, called the Bangor Post, but without success.

The tenant then offered, as a witness, the collector, by whom the tax sale was made, to prove that he duly published in the Bangor Post the auction sale for the payment of taxes.

The witness was objected to on the ground of interest, and was excluded.

It appeared *that* the demandant owned the adjoining lot, No. 21, and had claimed that it embraced a part of the demanded premises, and had erected a small house upon it ; *that*, for that occupation, Thomas Mitchell, one of the grantees under the tax sale, brought an action of trespass against the demandant ; *that* said action was referred to a referee, whose award, rendered in 1849, was in favor of Mitchell, and required the demandant to remove the house ; — *that* the demandant, both before and after the reference, said he had a deed of the whole of lot No. 20 ; and, that if Mitchell would not let him alone as to the piece in dispute, he would not allow Mitchell to have any of the land ; and *that* the demandant claimed to own the strip which was disputed in that action, as a part of lot No. 21.

Upon such of the foregoing evidence as was lawfully admissible, the Court, having power to draw inferences of fact, are to order a nonsuit or default as the law may require.

*Cutting*, for the demandant.

The marriage between Hezekiah Wright and Charlotte Sewall, in 1810, was valid. The statute of 1786, § 2, then in force, provided, that " when any religious society shall be destitute of a settled and ordained minister of the gospel, in case there shall not be such a minister within the town, district or plantation, in which such religious society is, it shall be lawful for any such minister within the same county, to join any person of such town, district or plantation in marriage," &c.

Now the presumption of law, in the absence of proof, is, that the doings of the minister were under the contingency provided for, and were therefore legal.

" Proof, by witnesses who saw the marriage, is *prima facie* sufficient, and whoever would impeach it, must show wherein it is irregular.

" If it appears there has been a marriage in fact, by a witness present, that saw the parties stand up and go through the usual ceremonies of marriage, directed by one who usually married, or usually appeared to marry persons, the Court will presume it was a legal marriage till the contrary is proved." *Damon's case,* 6 Maine, 148, and cases cited.

In this case the contrary has not been proved, but the legal inference is, that one of the parties lived in Monmouth, that in that place there was a religious society destitute of a minister, and therefore ." *it was lawful for any such minister within the same county to join any person of such town, district or plantation in marriage."*

In the case of *Ligonia* v. *Buxton,* 2 Maine, 102, the contrary was proved ; " he resided in Palermo and she in Montville," the marriage was in Knox, the minister and parties residing in different counties, all of which facts that case discloses, and the objection was, " because solemnized in *that* town in which neither of the parties then resided."

The testimony of the tax collector was properly excluded, for he was interested as warrantor in the tax deed.

All pretext of title under that sale therefore vanishes away.

But the tenant undertakes to avoid the plaintiff's title on the ground of *champerty.*

By R. S. of 1841, c. 91, § 1, it is enacted, that — " When any person shall make a deed of any lands or other real estate, owned by him in severalty or in common with others, acknowledged and recorded in the manner prescribed in this chapter; whether at the time of the execution and delivery of the deed he is seized, *or not seized,* of such lands, or estate, but to or for which he has a right of entry, such lands or

Pratt *v.* Pierce.

estate, or all the title or interest, which the grantor has in or to the same, *shall pass* by such deed of conveyance, as effectually as if the grantor was, at the time of the conveyance, seized of the same."

In this section new provisions are introduced, abrogating all common law or previous statute decisions, and placing every man, as he ought to be placed, upon *the strength of his own title.*

All then, that can be said, is, what Chancellor Kent said, as to the abrogation of the rule in Shelley's case : — " The juridical scholar, on whom his great master, Coke, has bestowed some portion of the gladsome light of jurisprudence, will scarcely be able to withhold an involuntary sigh, as he casts a retrospective glance over the piles of learning, devoted to destruction by an edict, as sweeping and unrelenting as the torch of Omar."

*A. W. Paine* and *J. H. Hilliard,* for the tenant.

The Act of 1786 restricts the authority of a minister from solemnizing marriages, except in the town where he resides.

The act of Dr. Gillet in marrying Hezekiah Wright and Charlotte Sewall, *in Monmouth,* was unlawful and of no validity. *Ligonia* v. *Buxton,* 2 Greenl. 102.

The 3d section of that Act, on which the tenant relies, provides that " every stated and ordained minister, *in the town* where he resides, shall be authorized to marry between persons, when one or both belong to or are residents in the town where such minister resides.

But the demandant's counsel urges that the law raises a presumption, from the very act of the minister, that he had authority to do it, and that the contingency named in the second section existed. But the facts necessary to impart to him the authority are matters not of presumption, but of proof.

In taking the conveyance from Charlotte Wright to the demandant, there was champerty, by which the transaction became a nullity.

The land had long been occupied adversely to her, and

under a claim of title had passed through several successive owners for a full consideration, actually paid. This was well known both to the demandant and to his grantor. By the terms of the conveyance, the demandant was to pay, only on condition that he should hold the land. Such a conveyance is unsustainable. Bac. Abridg. E, Title Maintenance; Title Grant, letter D; *Wolcott* v. *Knight*, 6 Mass. 118; *Everenden* v. *Beaumont*, 7 Mass. 76; *Swett* v. *Poor*, 11 Mass. 549.; *Brinley* v. *Whiting*, 5 Pick. 348; *Preston* v. *Hunt*, 7 Wend. 53; *Wickham* v. *Conklin*, 8 Johns. 170; *Arden* v. *Patterson*, 5 Johns. Ch. Cases, 44; 4 Black. Comm. 134; *Jackson* v. *Ketchum*, 8 Johns. 374; 4 Kent, 446, 449; *Etheridge* v. *Cromwell*, 8 Wend. 629; *Jackson* v. *Demont*, 9 Wend. 55; *Wandych* v. *Van Buren*, 1 Wend. 344; *Tomb* v. *Sherwood*, 13 Wend. 289; *Williams* v. *Jackson*, 5 Wend. 503; 20 Wend. 386; 7 Wend. 251; 13 Johns. Cases, 289; Stearns on Real Actions, 29.

Such an act of maintenance is a criminal offence, and from such an act of crime, no rights could be acquired. It is *contra bonos mores*. The provision of R. S., c. 91, § 1, was intended only for cases where there is an adverse possession of wild lands unknown to the parties to the conveyance. It never was intended that, when the parties to the conveyance knew all the facts, how the land is occupied and the nature of the adverse claim, that such mere right of action should be made a subject of barter, speculation and strife. The intention in this as in other cases, stamps the transaction as innocent or guilty. And this intention is an essential element in the offence of maintenance.

The difference therefore between this offence and the inconvenience that the statute proposes to remedy, is too obvious to be mistaken, and such are the views of Smith in his Leading Cases, vol. 2, p. 514, and to support his position he cites *Stephen* v. *Bagwell*, 15 Ves. 139.

There is another difficulty in regarding the statute as abolishing the offence of maintenance. All the authorities that treat upon the subject, and all the decisions of the courts, re-

gard maintenance as an offence, not only *malum prohibitum*, but *malum in se.* Stearns on Real Actions, 29; 4 Bl. Com. 132; 2 Justin. 208, 212; 1 Hawk. 255; 22 Wend. 403.

In *Phelps* v. *Decker*, 10 Mass. 274, the Court say such deeds are void *ab initio*, and may be avoided by evidence under the plea of *non est factum.* The same is decided in *Dale* v. *Rosevelt*, 9 Cow. 307, and in *Everenden* v. *Beaumont*, 7 Mass. 77–8; 15 Ves. 140. The same principle is affirmed by the S. C. of U. S. repeatedly. *Craig* v. *Missouri*, 4 Pet. 431; *Bartel* v. *Coleman*, 4 Pet. 184; *Hannay* v. *Eve*, 3 Cranch, 242, (1 Cond. 512); *Armstrong* v. *Tolu*, 11 Wheat. 258, (6 Cond. 298); S. C. 4 Wash. 297; 2 Phil. Ev. 367.

As between the parties, or either party to it, such a deed will not operate even as a basis for an adverse possession. 9 Wend. 511. Hence parol evidence is always admissible to prove such facts, and when proved will have the effect of vacating the deed *ab initio.* 4 Phillip's on Ev., Hill & Cowen's notes, 612, note 304 to p. 367.

Charlotte Sewall, at the time of giving her deed, was disseized. Until revested with a seizin she could not convey. At the common law her deed could therefore pass no title to the demandant. This rule of law is wholly a different one, and based on reasons entirely different, from the rule that a champertor's deed conveys nothing. 2 Smith's Lead. Cases, 548.

The deed from Charlotte Sewall to the demandant contained no covenant of any description. It was simply a release. But neither of them even have possession. Such a release, in such a case, conveys nothing.

Again, it was without any consideration, the bond not being payable unless the obligor should hold the land. Where there is no consideration, the conveyance merely operates as a trust for the use of the grantor. Co. Litt. 23 a; *Welch* v. *Foster*, 12 Mass. 93.

The R. S., c. 91, in its utmost extent, authorizes a conveyance where there is a right of entry. But Charlotte Sewall had no right of entry. It was more than thirty-five years, after the

descent had been cast upon Hezekiah H. Wright. In all that period there was no entry by him or any one claiming under him. The right of entry, therefore, had been lost by lapse of time, and the statute gives no relief.

SHEPLEY, C. J. — To establish the title of the demandant, it is necessary that he should prove, that Hezekiah Hartley Wright was the legitimate child of Hezekiah Wright. Positive proof of a legal marriage is required upon the trial of persons indicted for polygamy and adultery, and in actions for criminal conversation. In other cases, proof of facts, from which a legal marriage may be reasonably inferred, will be sufficient. It cannot be inferred from proof of facts, which show, that there could not have been a legal marriage. Such were the facts in the case of *Ligonia* v. *Buxton*, 2 Greenl. 102.

In this case, the facts proved, do not show, that there could not have been a legal marriage. If either of the parties resided in Hallowell, or if there was no ordained minister then residing in Monmouth, the marriage by the ordained minister residing in Hallowell was a legal one, although the ceremony was performed in Monmouth. The presumption of law, from the facts proved, is, that the ceremony of marriage was legally performed there being no proof, that it was not. *Damon's case*, 6 Greenl. 148. The presumption being that the minister did not violate the law, the marriage must be regarded as legal.

It is contended, that the demandant acquired no title by the deed made by Charlotte Wright to him, on Feb. 22, 1850, because he purchased the title knowing that person was disseized, and that another person was in possession, claiming title. By the common law, no title could have been thus acquired. In this respect, the common law has been abrogated in this State, by the provisions of the statute, c. 91, § 1, which declare, that all the title or interest of the grantor shall pass by a deed of conveyance, if he had a right of entry, whether he was seized or not, at the time of the conveyance.

But it is said, that the statute should receive a construction, that would permit such conveyances to be valid, when made under circumstances, that would not show, that the grantee had been guilty of maintenance, and decide them to be invalid, when made under circumstances, that would show it. The statute makes no such distinction or qualification. It appears to have been the intention, so to alter the law, as to permit the titles of persons disseized, and having a right of entry, to be as openly and freely sold and purchased, as they might have been, had there been no disseizin.

When a person had been wrongfully deprived of a part of his title by disseizin, the Legislature may have considered it hard, if not unjust, to make him submit to a less of the remainder or encounter the risk, loss and trouble of litigation.

Charlotte Wright had therefore a right of entry, when she conveyed it to the demandant, and her title passed to him.

As the counsel for the tenant admit, that the title derived from the collector of taxes was presented only to prove, that those claiming under it had been in possession under a claim of title, it will be sufficient to observe, that there is no proof, that the land was advertized in the manner prescribed by the statute then in force.

It is not insisted, that the deposition of the collector was not properly excluded.                    *Tenant defaulted.*

TENNEY, RICE and HATHAWAY, J. J., concurred.