SIDNEY B. MORSE *vs.* JEREMIAH SLEEPER.

*Levy. Judgment. Real action—pleading in.*

A levy upon real estate, made by virtue of an execution issued upon a judgment, wherein the debt or damage recovered exceeds the amount of the *ad damnum*, dates from the time of the levy, and does not relate back to the time of the attachment.

Such a levy is effectual to pass the debtor's title to the creditor and his assigns.

By reason of R. S. of 1857, c. 82, § 10, such an error cannot be made available for the purpose of reversing the judgment, "when the person and case can be rightly understood."

A levy made upon an undivided fifth of the execution debtor's estate held in common, is valid under R. S. of 1857, c. 76, § 7, provided the return states the debtor's ownership of the part taken, although it should appear that the debtor actually owned more.

It is essential to the validity of a levy made upon an undivided portion of the land, of which the execution debtor is seized in fee and in severalty, that it appear by the return that the premises levied on could not be "divided" by metes and bounds without damage to the whole."

A levy upon the land of one of the several execution debtors will be invalid unless the return show with certainty that the debtor, whose estate has been taken, chose one of the appraisers, or neglected to do so upon being duly notified.

Under the general issue in a real action, the defendant may disprove the seisin of the plaintiff, as alleged in the writ, by showing that the plaintiff's grantor had previously conveyed the title to a third person, although the defendant does not claim under him.

The simple evidence that land has been fraudulently conveyed by a debtor, and that the fraudulent grantee has quitclaimed all his right, title, and interest to a third person, will not prevent a prior creditor, subsequently levying his execution thereon under R. S. of 1857, c. 76, § 13, from acquiring the "momentary seisin" necessary to enable him to try the title with the party in possession not claiming under such conveyances.

ON REPORT.

WRIT OF ENTRY, in which the plaintiff sought to recover one undivided fifth part of certain premises situated on Owl's Head Harbor, and described in the writ, dated Aug. 12, 1865.

Plea, *nul disseisin*, with brief statements of denial of the plaintiff's title and allegation of seisin in the defendant; also alleging

that if the title be not in the defendant, it is in one Joseph Jackson, alleged to be seized.

The case is sufficiently stated in the opinion.

*Thacher*, for the plaintiff.

*Gould*, for the defendant.

BARROWS, J.  Both parties claim the premises here demanded, under conveyances from different levying creditors of Elisha Brown.

The demandant insists that his title originates with and dates from an attachment of Brown's real estate which Samuel F. Morse & Co. caused to be made Dec. 15, 1855, upon a writ on which final judgment in their favor was rendered at the October term, 1862, and followed by a seasonable levy.

As the tenant claims under levies made subsequent to this attachment, though prior to the levy under it, its validity becomes a matter of importance in considering the plaintiff's title.  Of the various objections alleged against it,—some of them plainly hypercritical and untenable,—one only need be considered.

The officer is commanded in the writ to attach Brown's goods or estate to the value of $500, and the *ad damnum* is fixed at that sum; but the case stood continued for judgment for five or six years, and when judgment was finally rendered, it was for a sum exceeding $530, debt or damage, besides costs of suit.

Now the lien created by the attachment upon the debtor's property could not exceed the sum which the officer was commanded in his precept to attach; the officer's return does not profess to go beyond it, and would have been void for the excess if it had.  The Morse levy was made for the whole sum for which judgment was rendered, with costs of levy, thus exceeding the amount of Brown's property which the officer was directed to attach, and did attach, by $77.

As the judgment-creditor confounded, in his judgment and levy, a claim for which he had no lien by attachment with one for which

he might have had such lien, the lien fails altogether, and the plaintiff's title must be deemed to have originated with the levy only, and cannot relate back to the date of the attachment. The difficulty was curable only by a remission, on the part of Morse & Co., of so much of their claim as exceeded $500, and by their taking judgment and levying their execution for no more than the officer had attached.

For obvious reasons, an amendment increasing the *ad damnum* would have dissolved the attachment. The creditor is placed in no better position by persisting in taking judgment and levying his execution for the excess.

Was the levy, under which the plaintiff claims, properly made?

The only objection specially alleged against it by the tenant's watchful counsel is, that it describes Brown's interest as an undivided fifth part of the estate, when, if the demandant's view of the title be correct, the debtor's interest was in fact about nineteen-twentieths. R. S., c. 76, § 7, providing that "the whole or a part of an estate held in joint tenancy or in common, may be taken and held in common, but the whole estate must be described, and the share of it owned by the debtor must be stated," is cited, and it is contended that a misstatement of the amount of the debtor's interest is fatal to the levy. But the same requirement as to stating the debtor's share or interest is found in c. 94, § 11, of the Revised Statutes of 1841, and this identical objection was made and considered in *Rawson* v. *Clark*, 38 Maine, 223, and held insufficient to invalidate the levy for reasons which are so well set forth there, that it is unnecessary to reiterate them here. The case is not like that of the levy in *Rawson* v. *Lowell*, 34 Maine, 201, a levy upon four-fifths of the debtor's interest in common, omitting any statement of what the share owned by the debtor was. That left the amount of the debtor's property taken to satisfy the execution altogether uncertain. It might be more, it might be less, according to the share in the whole which he was found to own. But here the levy is upon one-fifth of the whole, and of that fifth the debtor is stated to be the owner. It is a sufficient compliance with the statute re-

quirement, even if it should appear that the debtor in fact owned more than a fifth. There is no uncertainty here as to what the levy covered. The amount of the debtor's interest which is taken is definitely stated; it is not a fraction of an uncertain fraction; all that is designed to be compassed by requiring the share owned by the debtor to be stated is accomplished, and, as remarked by the court in *Howe* v. *Wildes*, 34 Maine, 574, " the construction contended for by the tenant would subject creditors to unreasonable hazard and liability to loss."

Nor do we think that the levy is liable to be defeated by the fact that Morse & Co. took a judgment for debt or damage exceeding the *ad damnum* in their writ.

Admitting that it is incumbent upon the demandant claiming under a levy to show a valid judgment, and that the tenant is in such a position as to entitle him to question and impeach the judgment (as to which, however, see *Woodman* v. *Smith*, 37 Maine, 21), still we find here a judgment rendered, by a court having jurisdiction of the parties and the subject-matter, upon process duly served on the defendant, Elisha Brown, and the error is not of such a description as could, at any time, under our statutes (R. S., c. 82, § 10), have been made available to reverse the judgment; for the persons and case can be rightly understood, and the defect might have been amended, though, as we have before seen, an amendment would have been fatal to the plaintiff's attachment. Moreover, the time within which a writ of error might have been brought to reverse it, had there been good cause, has elapsed, and the judgment of Morse & Co. must be deemed valid and binding, and the levy effectual to give the levying creditor (and through him, the demandant) such title as Elisha Brown had at the date of it.

We come, then, to the consideration of the matters set up in defense.

Of the seven levies, under which the tenant claims title in himself, five were made Nov. 21, 1856, as upon land held by the debtor, Brown, in fee-simple and in severalty, and no reason is assigned in either of them for levying upon an undivided share instead of

making the levy upon a portion of the property by metes and bounds. It is essential to the validity of such a levy, under c. 94, § 13, R. S. of 1841, that it should appear therein that the premises to be levied on could not be divided without damage to the whole. *Merrill* v. *Burbank,* 23 Maine, 538; *Mansfield* v. *Jack,* 24 Maine, 98.

The omission must be held fatal to these five levies; and as they cover $\frac{928}{2265}$ of the whole estate, it is plain that the one-fifth levied on by the demandant's grantor was left open to his subsequent levy. But the levy upon Hammond's execution against Brown and others, though not defective in this particular, seems to be identical in phraseology, so far as the statement of notification to the particular debtor, whose land was seized, and choice of an appraiser by him is concerned, with the levy in *Harriman* v. *Cummings,* 45 Maine, 351, where it was held that it must appear with certainty that the debtor, whose estate was taken, selected one of the appraisers, or was notified to choose one and neglected, or the levy will be void. That decision was followed in *Boynton* v. *Grant,* 52 Maine, 220, and must be deemed conclusive against the validity of Hammond's levy.

Apparently, the only valid levy presented by the tenant is that of Sidelinger upon $\frac{737}{2265}$ of the property, and that is offered in evidence by the demandant to justify the course taken by Morse & Co., under whom he claims, in levying as upon an estate held by Brown in common with others.

Indeed, the able counsel for the tenant does not undertake in argument to sustain those levies, but confines himself to attacking the attachment and levy under which the demandant makes his title, and to claiming that the title, if not in the tenants, is in one Jackson, and not in the demandant, and that Jackson's title is fatal to the maintenance of the suit.

As, of the two parties here contending, the demandant has shown the better title, this last position remains to be considered.

The tenant offers in evidence a quitclaim deed of the Owl's Head Stand, including the demanded premises, dated October 12,

and recorded Oct. 16, 1855, from Elisha Brown, the debtor, to Isaac Tolman, 3d, purporting to convey in consideration of $10,000, "all my (Brown's) right, title, and interest in and to" the same, "containing eleven acres," etc.; also a quitclaim deed from Isaac Tolman, 3d, to Joseph Jackson, dated Dec. 10, 1858, and recorded March 12, 1859, purporting to convey in consideration of $600, "all my (Tolman's) right, title, and interest in and to a certain lot" of land in South Thomaston, which embraced the Owl's Head Stand, and another parcel adjoining it, which appears to have been conveyed by Brown to Tolman, Oct. 12, 1855, in consideration of $1300, by another deed, and thereafterwards mortgaged June 11, 1858, by Tolman to Jackson, for about $550. The mortgage, however, was upon the Daniel Emery lot adjoining the Owl's Head Stand, and does not extend to any part of the premises here in controversy.

Hereupon the tenant contends, that if he was not the owner of the premises by virtue of his levies at the time of the levy under which the demandant claims, Jackson was the owner of all Brown's estate in them by virtue of these conveyances. If it is competent for the tenant to set up this title in Jackson, under whom he does not claim, and to introduce these deeds, which the demandant denies, the demandant presents, to rebut it, the uncontradicted testimony of Brown, the debtor, by which it appears that he made the quitclaim deed of the Owl's Head Stand to Tolman, who was in his employ at the time, for the purpose of having Tolman hold it in trust for him, so as to enable him to control it and prevent any one of his creditors from attaching it, to the exclusion of the rest; that he told Tolman the object when he proposed to make the conveyance to him, and that Tolman did not then or ever pay him anything for the property, or ever to his knowledge assert any right, title, or interest in it, and that he (Brown) continued to occupy and use the property until March, 1857.

The tenant does not claim under these deeds to Tolman and Jackson, but he proposes to make use of them to defeat the plaintiff's suit, and thus retain the present possession of the premises

and the power to litigate the title with any one who may assert a claim under these deeds which he sets up against this demandant. One is led to inquire how far and to what just or legitimate end can this line of defense be pursued. With us the form of the pleadings and the character of the issue to be tried, and the burden imposed upon each of the litigating parties, respectively, to entitle him to prevail, are all regulated by statute.

The first ten sections of c. 104, R. S. of 1857, furnish the formula by which most of these questions are to be solved. Selecting those provisions which seem applicable to the questions we are now considering, we find: that by § 2, the demandant is required to declare on his own seisin within twenty years prior to the date of his writ, and allege disseisin by the tenant; by § 4, that " he need not prove an actual entry under his title, but proof that he is entitled to such an estate in the premises as he claims, and that he has a right of entry therein, shall be sufficient proof of his seisin ; " by § 6, that every person alleged to be in possession of the premises demanded, claiming any freehold therein, may be considered a disseizor for the purpose of trying the right; that the defendant may plead in abatement (or by brief statement filed within the time allowed for pleas in abatement, unless the time is extended by leave of court), but not in bar, that he is not tenant of the freehold, and disclaim such portion of the premises as he does not assert a title to in himself; and by § 8, that in a trial upon the general issue, if the demandant proves that he is entitled to such estate in the premises as he has alleged, and had a right of entry therein when he commenced his action, he shall recover the premises unless the tenant proves a better title in himself.

In the present case, the brief statement of title in Joseph Jackson, filed by the tenant, with the general issue, was not filed within the time allowed for pleas in abatement, or within any extension of the time. It was not designed to have the effect of a special nontenure, and put the demandant to proof of an ouster by the tenant. The tenant asserts his own title in the premises, and Jackson's is presented only in the alternative, if his own fails. The only pur-

pose for which the evidence of it can be received is to rebut the demandant's proof of seisin by showing that at the date of the levy, under which demandant claims, the execution debtor had no title. For, as we have seen, if the demandant establishes his seisin within twenty years, as alleged, and his right of entry, " he shall recover the premises unless the tenant proves a better title in himself."

In *Shapleigh* v. *Pillsbury*, 1 Maine, 290, the court speak of it as a common principle, well known and familiar, that when the demandant has established his title and seisin within the time alleged, the tenant shall not be permitted to show title in a third person unless he can derive title from such person to himself by legal conveyance or operation of law.

We are not now to inquire whether, if this controversy were between the demandant and some party in possession claiming title under Joseph Jackson, the title of Jackson's grantee would prove to be a better title than that of the demandant, but whether the existence of Jackson's deed of itself disproves the plaintiff's allegation of seisin.

In *Stanley* v. *Perley*, 5 Maine, 369, it was settled that it is competent for the tenant, under the general issue, to disprove the seisin of the demandant, as alleged in the writ, by showing that the demandant's grantor had previously conveyed the title to a third person, even though the tenant does not claim under such grantee. This decision rests upon sound principles and has never been impugned. It was followed in *Chaplin* v. *Barker*, 53 Maine, 275.

But the case at bar differs from these two in one very important particular. In neither of those cases was it even attempted to be shown that the prior conveyance by the execution debtor was tainted with fraud, while here the proof is plenary and uncontradicted that the conveyance from Brown to Tolman, whose title Jackson holds, was made for the express purpose of delaying and defrauding creditors, of whom this demandant's grantor was one.

By virtue of R. S., c. 76, § 13, a levy may be made upon land fraudulently conveyed by a debtor, and the officer shall deliver to the creditor a momentary seisin, which shall be sufficient to enable him to maintain an action for its recovery in his own name.

If, then, the title had stood in Tolman's name at the date of the demandant's levy, it is perfectly clear that Brown's deed to Tolman could not have availed to disprove the seisin of the demandant; for, by the express provision of the statute, the momentary seisin given by the officer will suffice to enable the creditor to put the party in possession upon proof of a better title in himself.

Does the quitclaim deed from Tolman to Jackson, bearing date prior to the demandant's levy, make any difference?

Under the statute provision just referred to, we must hold that where land has been fraudulently conveyed by a debtor, a further conveyance by the fraudulent grantee will not so completely purge the fraud as to prevent the levying creditor from acquiring the momentary seisin necessary to enable him to try the title with the party in possession; otherwise two successive conveyances, both of which may be fraudulent and designed to secure the property for the debtor's benefit, would effectually place it beyond the creditor's reach, in contravention of the spirit and intent of the statute. We do not say that a conveyance by the fraudulent grantee to a *bona fide* purchaser for value without notice of the fraud would not give the latter a better title than the creditor would derive from a subsequent levy, but only that the momentary seisin which the officer gives the creditor will enable him to maintain his action, unless the party in possession shows a better title in himself; in fine, that proof of such conveyances does not rebut the evidence of the levying creditor's seisin. In the present case, as the tenant does not claim under these conveyances, but under his own levies, it is not, perhaps, necessary to take any further notice of them.

But it may, perhaps, be worthy of remark, that the deed from Tolman to Jackson is a mere quitclaim of his (Tolman's) right, title, and interest, made upon a nominal consideration which contrasts strangely with those named in the two deeds from Brown to Tolman, and that there is no evidence that either Tolman or Jackson ever had any possession under these conveyances of the Owl's Head Stand, which would seem to have passed from the possession of Brown into that of the levying creditors. Tolman's deed to

Jackson does not purport to convey the land, but only the right, title, and interest of the grantor in it, and that (upon the testimony here presented) was the right, title, and interest of a fraudulent grantee. If the tenant held Jackson's title as well as his own, it would certainly be incumbent on him at least to show a purchase by Jackson in good faith, for value without notice, when the first link in the chain is invalidated by fraud. In *Oliver* v. *Pratt*, 3 Howard, 333, Judge Story says, " it is difficult to conceive how a grantee, under a quitclaim deed, can claim protection as a *bona fide* purchaser without notice for a valuable consideration, against any title paramount to that of the grantor, which attaches itself, as an unextinguished trust, to the land."

It will be time enough, however, to discuss the validity of Jackson's title when it is presented by a party claiming under it. For reasons before adverted to, it cannot in any view of it be considered as rebutting the demandant's evidence of seisin; and that being established, the demandant would be entitled to recover unless the tenant can show a better title in himself.

The demandant's seisin as alleged, and his right of entry being made to appear, the question then is, which of the two litigating parties has the better title,—not whether some third person, who presents no claim, might prevail against either or both of them.

According to the stipulations in the report,

*Case to stand for trial.*

APPLETON, C. J.; CUTTING, DICKERSON, and TAPLEY, JJ., concurred.