HENRY L. MITCHELL *vs.* WILLIAM H. SMITH.

Penobscot.    Decided April 7, 1876.

*Deed.*

Where partition deeds are mutually given of parts of premises, before held in common, the deeds should be construed together.

In such case, if the deeds are free from ambiguity, so *that the intention of the* grantors, whether clearly expressed or not, can be made certain by an examination of the papers themselves, then extrinsic evidence of such intention, whether consisting of the acts and declarations of the parties at the time of the delivery·of the deeds, or the mode of subsequent occupancy under them, cannot be received to modify their legal effect.

Where deeds of partition are mutually given, one of which purports to convey an undivided half part of land and buildings, and in the corresponding clause of the other there is no mention of buildings in terms, the parties at the date of the deeds, owning the buildings in the same proportion as the land, the omission to mention the buildings does not prevent the grantor's interest in them from passing with the conveyance of the lot on which they stand.

Where, in a deed, a divisional line in a partition of land is in terms at right angles with the side line and is also made to pass through the thread of the middle partition of a double house, which is not exactly at right angles with the side line, the partition as a monument must control.

In such case where there is a jog of three feet at the point where the main house joins the ell, *held*, that the divisional line will not diverge in its course to follow the existing partition through the ell.

On report.

WRIT OF ENTRY, (omitting unnecessary particulars) of a lot of land on the east side of Ohio street, Bangor, beginning at a post in the fence ; thence, north 44° 12' east, by the fence to a stake 150 feet at right angles from said street; thence, southeasterly parallel with said street to a point in the rear line of the lot where a straight line shall intersect it drawn through the middle of the double tenement house, the north tenement of which is occupied by the said Mitchell, and the south by Charles Hight, equidistant from either end of said house, and about twenty feet from either end ; thence, westerly in a straight line drawn as aforesaid to said street; thence, northerly to the point begun at.

The defendant filed a disclaimer of all that part of the demanded premises lying northerly of the partition wall and the thread thereof, dividing the northerly tenement occupied by the plaintiff from the southerly tenement occupied by Charles Hight, tenant of the defendant, and northerly of a straight line drawn in continuation of the thread of said wall to Ohio street on the one side and the rear line of the lot on the other. And the defendant alleged that he was not in possession and did not claim any interest in such disclaimed portion only an easement or right of possession of that part of the house lying north of said partition which formed a part of the south tenement of said house to continue so long as said house should stand.

The plaintiff's and the defendant's premises formerly composed a single lot owned by a single individual, having upon them a large wooden house with ell and woodshed or stable. In 1851, the lot was conveyed to the two brothers, William and Asa W. Babcock, who thereupon proceeded to remodel or change the structure of the buildings so as to make a double tenement house, with partitions between them, for the convenience of their two

families, with separate front doors and entries in manner hereafter described, to be occupied by their two families. William Babcock having the most northerly and Asa Babcock the most southerly tenement. This construction of the two tenements ever after during the entire lives of the two parties, and from that time to the present, has remained; and each has occupied his tenement quietly and with concurrence of the other, until after the purchase by the plaintiff, the construction still remaining as it was originally made by the Messrs. Babcock in 1851, or about that time. Both brothers subsequently died, when partition deeds were made between their respective families or heirs on April 6, 1866, both deeds being executed and delivered and recorded at the same time.

The descriptive part of the deed of the northerly tenement is as follows: "All that part of the lot and double tenement house thereon, lying northerly of a line drawn from said street to the rear line of the lot in a straight direction through the thread or middle of the partition between said tenements; this deed, and another of the same date, being made for the purpose of making a partition of said lot, so that said grantors may have all south of said line, and said grantees all north thereof."

The descriptive part of the deed of the southerly tenement is similar in form using the word southerly instead of northerly and omitting the words: "and double tenement house thereon."

The defendant subsequently purchased the southerly tenement, of Caroline A. Farnsworth *et als.* heirs of said Asa Babcock, by deed dated November 15, 1866.

The plaintiff subsequently purchased the northerly tenement of Robert B. and Lucinda A. Norman, heirs of said William Babcock, by deed dated April 1st, 1872, the descriptive part of which deed so far as it relates to the premises in dispute, is similar to the description in the writ.

Referring to the partition thus made between the tenements by the two brothers, it turns out that the partition wall between the two tenements is not a continuous straight line from the front of the house to the rear of the buildings, but at the point where the ell joins the main house there is an offset of about three feet northerly, the partition from that point being in a straight line east-

erly, to the rear of the stable, through the ell and stable, and from the line between the main house and ell westerly in a straight line to the front of the house between the front doors, except at the doors there is a slight curved deflection according to the accompanying plan which makes a part of the case. But this refers to first or lower story.

The partition between the tenements in the second story is directly over that in the first story, both in the ell and stable, and in the main house, except that the space over the front entries of both tenements is finished off into a single bedroom, connected and used with the southerly tenement by the defendant, and having no connection whatever with the northerly tenement for use, one-half of said bedroom being northerly of the middle line of the partition running through the lower story of the main house, and the other part of said bedroom being southerly of said partition.

The partition between the cellars under the main house, is about three feet northerly of that between the stories above, the cellar stairs of the southerly tenement going down from the dining-room in the ell immediately in contact with the cellar board partition. Until after the present plaintiff purchased there was no cellar under any but the main part of the house, nor is there now under the southerly tenement of the ell. The plaintiff, however, since his purchase, has extended his cellar back to include the ell. The external cellar wall under the main house is of stone ; the partition of boards stood up endwise. In the same manner the external cellar wall which the plaintiff has placed under the ell is of stone, while the inner one is of boards, and not even secured by nails.

The defendant offered proof that it was for a valuable consideration agreed by the parties, that so long as the buildings should stand the whole of the bedroom over the front entries should go to the southerly tenement, to be used by its owners, and also all that part of the cellar south of the partition between the cellars ; that such was the design in making the partition deeds, and that both parties ever after acquiesced in that division and understanding until the plaintiff purchased as aforesaid.

To the admission of this testimony the plaintiff objected, and denied the accuracy of the statements.

The plaintiff offered proof that when he purchased, as before stated, the party who delivered the deed to him advised him (plaintiff) that he could at once occupy according to his deed, and move the partition correspondingly; that prior to consummating the purchase he (plaintiff) called upon Charles Hight, tenant of the premises now and ever since the defendant's purchase, who conceded to him the right to have the partition moved to correspond with the line as now claimed by him (the plaintiff). The plaintiff also offered to prove that Hight was at that time, and at the date of the commencement of this action, the real owner of the southerly tenement and lot, and so held himself out with regard to repairing, leasing and selling the premises, and that the same is held in trust for him by the defendant.

To the admission of all the above testimony the defendant objected, and denied the accuracy of the statements.

The case was continued on report for the consideration of the law court, who are to render judgment, or otherwise dispose of the case as the legal rights of the parties require. If the testimony offered and objected to is admissible, and is regarded as important, the case is to stand for trial, as the full court may order.

*F. A. Wilson & C. F. Woodard*, for the plaintiff.

*A. W. Paine*, with *A. L. Simpson*, for the defendant.

VIRGIN, J. The decision of the case depends upon the construction of the two deeds of partition under which the plaintiff and the defendant respectively claim. If the deeds are free from ambiguity, so that the intention of the grantors, whether clearly expressed or not, can be made certain by an examination of the papers themselves, then extrinsic evidence of such intention, whether consisting of the acts and declarations of the parties at the time of the delivery of the deeds, or of the mode of subsequent occupancy under them, cannot be received for the purpose of mod ifying their legal effect.

The grantors in each of these deeds, prior to their delivery, were the owners of an undivided half of the lands and buildings in controversy. The deeds were executed for the purpose of effecting a division of the estate; and it is conceded in argument

that they were delivered at the same time, and as part of one transaction, and should be construed, not separately but together; in order that each may render aid, so far as may be, in determining the legal effect of the other.

It is apparent from an examination of the two deeds that the grantors in each were equal owners in the property; that one deed formed the consideration for the other ; and that they each purport to have been given for the purpose of making partition between persons having an equal interest, and to convey an undivided half of the premises, so that each owner might subsequently hold in severalty as previously he had held in common.

It is true that in the first part of the deeds, the descriptive clause in one purports to convey an undivided half part of land and buildings, and in the corresponding clause of the other there is no mention of buildings in terms. But it being conceded that at the date of these deeds the grantors in each were the owners of the buildings in the same proportion as that in which they held the land, the omission to mention them does not prevent the grantors' interest in them from passing with the conveyance of the lot on which they stand. In this respect, the legal effect of the two forms of expression employed in describing the interest conveyed is precisely the same.

It is further evident by the terms of these deeds that the grantors of the plaintiff were to have all north of a "line drawn from said street to the rear line of the lot in a straight direction through the thread or middle of the partition between said tenements," and that the grantors of the defendant were to have all south of the same line.

If then this partition, the thread of which forms the line of division between the adjacent owners, can be ascertained and its position determined, the problem is solved. Referring to the plan which accompanies the report and makes a part of the case, it is apparent that there is no partition which runs through the entire buildings in a straight direction, nor does the partition in either story of the main house correspond throughout with that in any other story. But notwithstanding this, there is no difficulty in determining which is the principal partition of the main house,

viz : that between the tenements on the first floor.   We say there is no difficulty in determining this, because the partition in the cellar is merely of plank placed lengthwise, while that on the second floor corresponds with what we have designated as the principal partition, with the exception of some closets and the room over the front entry.

We find, moreover, that this main partition is about equidistant from the sides of the lot as well as from the ends of the main house, and that its line of direction substantially coincides with, or but slightly varies from, a line dividing the lot into two equal portions from east to west.

We regard it, therefore, as reasonably certain that this principal partition of the main house is the one which under the terms of the deeds determines the position and direction of the central line of division between the adjacent lots, and that the description of this as a straight line is controlled by said partition, as a monument, so far as it extends.

The deeds, then, are free from ambiguity.   The line in controversy begins at a point on the street directly opposite the centre of said partition, thence runs in a straight direction to said centre, thence along the thread or middle line of said partition to the point where the main house joins the ell, (being controlled in this last course by the partition as a monument) thence in a straight direction at right angles with said street to the rear line of the lot.

We see no evidence in these deeds of an intention to subject the northerly half of said main house to an easement, in favor of the southerly half, in the cellar, closets or room over the front entry ; nor will any legal construction of these deeds allow the straight central line of division between the lots to diverge three feet from its course in order to follow the existing partition through the ell and stable.

As the line drawn through the centre of the principal partition of the main house is not precisely a straight line, but from the street inclines slightly towards the north, it is evident that the description of the demanded premises contained in the writ may be claimed to include a very narrow strip of land south of what we have indicated as the true line.

Upon amendment of the writ, so as to exclude from the description of the premises demanded all that portion south of the true dividing line, as we have described it, the entry will be,

*Judgment for demandant.*

APPLETON, C. J., DICKERSON, DANFORTH, PETERS and LIBBEY, JJ., concurred.