SAMUEL NASH and others, in equity

*vs.*

JAMES M. BEAN and another.

Penobscot. Opinion February 5, 1883.

*Deed. Release.*

When the owner of land releases his right, title and interest to another, his subsequent deed of release to a third person conveys no title; and if the latter be recorded before the former, the former will still hold the title as against the subsequent release.

BILL IN EQUITY.

Heard on bill, answer and proof.

*Barker, Vose and Barker,* and *A. L. Simpson,* for the plaintiffs.

*A. W. Paine,* for the defendants.

VIRGIN J. This is a bill in equity, wherein the the plaintiffs, claiming title to certain land in Union Place, Bangor, complain that a deed of release of the premises given by the defendant

to his co-defendant Perry, creates such a cloud upon the title as prevents its sale ; and they pray for its removal.

The case discloses the following leading facts : "On September 3, 1870, Samuel Nash, one of the plaintiffs, holding the legal title thereof, mortgaged the premises together with other lands, to Bean, the condition of the mortgage providing that the mortgage shall become void, if the said Nash shall well and truly indemnify and save harmless the said grantee from all loss, cost and damage which may accrue to him from having endorsed, for the accommodation of said Nash, three notes for two thousand dollars each, payable, &c., and shall pay said notes at maturity and also save him harmless from all loss, cost and damage from any subsequent endorsements or guaranties which said Bean may make for him, and shall repay to him, &c., all sums of money which said Bean may advance or repay for him, at his request."

On November 21, 1870, Bean, being about to go on a journey, executed a release of the mortgaged premises to Nash and deposited it, as an escrow, with his son, to be delivered to Nash upon surrender of the endorsed notes.

On September 21, 1871, Bean released his interest in the other lands to Nash who sold them and paid the proceeds thereof upon the endorsed notes, and on the same day, pursuant to an arrangement with one Webb and Bean, Nash released his interest in the Union Place land to Bean, who, at the same time, mortgaged it to Webb to secure Bean's note of one thousand dollars endorsed by Nash ; and the money received therefor was also paid on the endorsed notes.

Of the original debt of six thousand dollars for which Bean was holden as endorser, there remained outstanding, on April 2, 1872, only two notes of one thousand dollars each. Just prior to that date, Nash had informed Bean that one Patten would take up the two outstanding notes provided he could have security. And on that day, Nash executed a mortgage of the Union Place premises, subject to the Webb mortgage, to Patten as indemnity for taking up the notes ; and they were paid to the holder and surrendered, thereby discharging the remainder of

the debt, for the security of which the original mortgage, of September 3, 1870, was given.

Nash's mortgage to Patten, though executed on April 2, was not delivered until May 3. In relation to Nash's title and consequent right to mortgage to Patten, there is a conflict of testimony. Bean alleged in a bill in equity instituted against Nash in Boston, in 1874, and testified before referees who heard the bill, and alleged in his answer to these plaintiffs' bill, that in April or May, 1872, he released his interest in the Union Place lot, to Nash; he so wrote the insurance company and had the policy on the property cancelled. And he now unqualifiedly testifies to the same, and that the release contained certain conditions which would give Patten a good title "if he paid these notes" — meaning the two outstanding notes which Patten did pay — "and that the conditions of that deed were complied with." On the other hand Nash testifies that, instead of such a release being given, at the time mentioned, the escrow was reconstructed with Bean's consent, by changing the date and including in the premises the words, — "and also by deed of September 21, 1871;" that the deed thus amended, was reacknowledged and delivered by Bean to him; and that he, on May 3, 1872, delivered it together with the mortgage of April 2, 1872, to Patten, who caused both to be recorded on the following day.

On March 5, 1874, Nash paid Patten the amount due on his mortgage and it was discharged. Thereupon, on the next day, Nash conveyed the premises to Eleanor Nash who died on December 6, 1875, leaving the complainants as her heirs.

On August 4, 1877, the Webb mortgage was discharged on payment by Nash of the balance due thereon and the note surrendered to Bean. Whereupon J. H. Bean, holder and assignee of the Webb mortgage, assigned the unpaid balance due for rent and surrendered the premises, to Patten, who as executor of the last will and testament of Eleanor Nash, controlled the premises and collected the rent thereafter for the heirs.

On June 23, 1880, Bean executed and delivered a, naked release of the premises to his co-defendant F. R. Perry, and this is the deed complained of.

Unless all of the evidence bearing upon the question is false, Bean delivered a release of the premises to Nash, about the first of May, 1872. Before any controversy arose, he so wrote to the insurance company. Whether it was the escrow reformed, as Nash testifies, or another one, as Bean testifies, is quite immaterial so far as this suit is concerned. For if Bean is right, he had no title when he released to his wife's nephew, Perry, and therefore could convey none to Perry notwithstanding Perry's deed was recorded and the deed to Nash was not. *Coe* v. *Persons unknown*, 43 Maine, 432; *Walker* v. *Lincoln*, 45 Maine, 67; *May* v. *McClaire*, 11 Wall. 232. This release passed all the title Bean had, not only under the original mortgage, but also under Nash's deed to him of September 21, 1871; and hence the mortgage was in fact discharged.

The award of the referees, if conclusive upon the parties as the defendants contend, settles the fact that Nash owed Bean nothing; but also decided that Nash should pay Bean two hundred and fifty dollars for wrongfully recording the escrow. But that did not come within any of the provisions of the mortgage conditions.

The conduct of the defendant Bean and his son (to whom the father advanced the money to purchase the Webb mortgage) in surrendering possession of the premises on payment of the amount due on the Webb mortgage, demonstrates their understanding of the state of the title at the time. And our opinion is that that they were correct then and wrong now. To remove all doubt in relation to the title, the respondents should release to these complainants, all right, title and interest in the premises.

*Bill sustained without costs.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and SYMONDS, JJ., concurred.