LEVI H. MAY *vs.* DOCITE LABBE.

Aroostook.　Opinion January 31, 1916.

*Adverse Possession.　Deeds.　Disclaimer.　Judgment.　Lines agreed*
*upon.　Nul disseizin.　Occupation of land.　Pleading.*
*Presumption.　Prima facie title.　Proof of*
*plaintiff's title.　Revised Statutes,*
*Chapter 106.　Writ of Entry.*

1. In a real action, pleading disclaimer as to part of the land demanded, and the general issue as to part, does not relieve the demandant from the necessity of proving title to the part not disclaimed.
2. In a real action, when the tenant claims a part only of the land demanded and disclaims the remainder, the plaintiff may show title to, and recover, a specific part of the premises, though less than he has demanded.
3. Clear and unambiguous calls in a deed cannot be set aside and different ones substituted in their place by parol proof of the acts of the parties, either before or after the deed was made.
4. In the defendant's title deed his westerly line is described as "thence in a southerly course of said brook to a post on the south side of the county road, thence southerly parallel with the east line of said lot;" *held,* that the brook was the boundary as far as the post at the brook, as the brook run at the date of the deed, and a line parallel with the east line of the lot was the boundary from the post to the rear end of the lot.
5. Upon the evidence the plaintiff is clearly the owner of a part at least of the disclaimed premises, and a verdict for the defendant for the whole of it was unmistakably wrong.

Writ of entry to recover tract of land in Aroostook county. Part of the land claimed in the plaintiff's writ is marked on the plan or sketch shown in the opinion of the court and called "disputed tract."

The defendant disclaimed as to all of the land lying westerly of the line marked C D on the sketch or plan and pleaded nul disseizin as to the strip between the line A B and the line C D, called the disputed tract.

The jury rendered a verdict for the defendant, and the case was before the court on motion by plaintiff for new trial and exceptions to certain rulings of the presiding Justice. Exceptions not considered. Motion for new trial sustained. So ordered.

Case stated in opinion.

*James D. Maxwell,* for plaintiff.

*A. S. Crawford, Jr., and J. A. Laliberte,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HANSON, PHILBROOK, JJ.

SAVAGE, C. J. Writ of entry to recover a tract of land in Fort Kent. The case has been before this court once before on exceptions to the direction of a verdict for the defendant. The court held that there was at least prima facie evidence that the plaintiff had title to the disputed strip or to some part of it. *May* v. *Labbe,* 112 Maine, 209. Upon a second trial the jury found for the defendant. And the case comes up on plaintiff's motion for a new trial and exceptions.

The plaintiff owns the westerly part of Lot 18, south of the St. Francis road so called, and the defendant the easterly part. Their lands adjoin. The controversy relates to the location of the dividing line. The situation is shown approximately upon the following sketch:

The description of the land in the plaintiff's writ commences "at an iron pin driven near the center of Campbell brook at the bridge where the St. Francis road crosses said brook," which is the point A in the sketch. It proceeds thence southerly to point B, westerly to the westerly lot line of Lot 18, northerly to the St. Francis road, and easterly by the road to the place of beginning. The defendant has disclaimed as to all of the land demanded westerly of the line C D on the sketch, and has pleaded nul disseizin as to the strip between the line A B and the line C D. The strip in dispute is 183.8 feet wide, and nearly three-fourths of a mile long.

By their verdict the jury must have found that the plaintiff did not have title to the disputed strip, nor to any of it.

A brief statement of the legal rights of the parties as affected by the pleadings will tend to simplify the discussion of the evidence. Disclaimer pleaded is a plea of non-tenure, and must be pleaded in abatement, R. S., ch. 106, sect. 6. If, under it, the tenant shows that he was not in possession of the premises when the action was commenced, the action is entirely defeated; but if he was in possession of any part of the land disclaimed, the demandant prevails. *Putnam Free School* v. *Fisher,* 34 Maine, 172. If the tenant disclaims as to part, and pleads nul disseizin as to the remainder, the plea admits the tenant to be in possession of all land not specially disclaimed, and if it appears that he has not in his disclaimer described the true boundary line and has failed to disclaim some part of the demandant's land, the demandant may have judgment for the part disclaimed, as well as for the part of his land not disclaimed. *Perkins* v. *Raitt,* 43 Maine, 280. When a tenant claims, or is in possession of a part only of the premises he may describe such part in a statement filed in the case, and disclaim the remainder, and if the facts contained in such statement are proved on trial, the demandant shall recover judgment for no more than such part, and not for the portion disclaimed. R. S. , ch. 106, sect. 6.

But pleading disclaimer as to part, and the general issue as to part, does not relieve the demandant from the necessity of proving title to the part not disclaimed. He can recover only upon the strength of his own title, and not upon the weakness of the tenant's. *Morse* v. *Sleeper,* 58 Maine, 329; *Coffin* v. *Freeman,* 82 Maine, 577; *Hazen* v. *Wright,* 85 Maine, 314. The same rule applies as in

ordinary cases of real actions. The tenant may hold the demandant to the proof of his title, though he, himself, has none. *Brown* v. *Webber*, 103 Maine, 60. But the controversy is limited to the part not disclaimed. As in other real actions, the demandant may recover a specific part of the premises to which he proves title, although less than he demanded. R. S., ch. 106, sect. 10. But he cannot recover more than he shows title to. See *Kimball* v. *Hilton*, 92 Maine, 214. The matter of pleadings, and the rights of parties thereunder is regulated by statute. R. S., ch. 106, and the construction we have given harmonizes all the statutory provisions.

The facts in this case, either undisputed, or such as a jury would be warranted in finding may be summarized as follows:

The land in controversy is a part of lot number 18 in the town of Fort Kent. The title to lot 18 until 1876 was in the State of Maine. But it had been settled upon by one Joseph Wildes. Although Wildes had no title he gave a deed of the westerly half to his daughter and of the easterly half to his son, Joseph Wildes, Jr. Before the deeds were made, the parties went to the north end of the lot, started at a point at the center as nearly as they could estimate, and with a pocket compass run a course, and marked it, to the south end of the lot, intending to divide the lot into two parts about equal in size. This conventional dividing line is claimed by Labbe to be coincident with the line C D on the sketch, which is the line to which he has disclaimed. The conventional line at least touched the ash tree and the cedar stump in line C D. The deeds of Wildes to his children are not in evidence, and we do not know what lines they described. Later, but prior to 1876, other deeds were made of the easterly part of the lot, the part now owned by Labbe. At one time it came into the possession, under deed, of Edward Eaton, who made a deed of it in 1874 to George Fitzgerald. A small tract seems to have been deeded by Joseph Wildes, Jr. to one Smith, who later deeded to Eaton. The deeds are not in the case, and the precise location of that tract is in dispute.

The State, September 28, 1876, gave Norman Campbell a deed of the whole lot, and July 4, 1877, Norman Campbell conveyed the easterly part of the lot to one Cunliffe. It does not appear that Norman Campbell ever made any other conveyance. October 3, 1877, Fitzgerald conveyed to Eaton, and on the next day Cunliffe

conveyed to Eaton. September 28, 1881, Eaton conveyed to the defendant. In all these deeds of the easterly part, beginning with Eaton's deed to Fitzgerald in 1874, the descriptions were substantially alike. In the defendant's deed, the land conveyed is described as follows: "Commencing at the southeast corner of lot No. 18, thence running northerly on the east line of lot No. 18 to the Campbell brook, thence in a southerly course of said brook to a post on the south side of the county road, thence southerly parallel with the east line of said lot No. 18 to the rear line of said lot, thence easterly to the first mentioned bound." In some of the deeds, as in that of Campbell to Cunliffe, the westerly line was described as "running in a southerly or southwesterly course up said brook to a post on the south side of the county road," etc.

The plaintiff claims title to the westerly part of lot 18 under warranty deeds, which were construed in *May* v. *Labbe,* supra. By his deeds his land is bounded "on the easterly side by land occupied by Docite Labbe," the defendant. When the case was before the court the first time, it was held that the plaintiff's warranty deeds afforded sufficient evidence of title in him to justify a verdict in his favor unless the defendant proved a better title. And inasmuch as the plaintiff is bounded on the east "by land occupied by" the defendant, it was also held that the defendant's occupation, in the absence of proof to the contrary, is presumed to be under and in accordance with his deed, and coextensive with the premises therein described.

The defendant in argument does not claim title to the disputed strip by adverse possession. There is not sufficient evidence to warrant such a claim. He makes the broad claim that his deed by proper construction includes the whole strip. He says that the "post" named in the description of the westerly line, as "a post on the south side of the county road" did not mean a post at or in the brook, but a post at the northwesterly corner of the disputed strip at the point C. This point is nearly 200 feet from the brook, and the only evidence that a post was ever there is that of a witness who says that a stake was set down near the road for a guide, when the conventional line was run.

The defendant relies much upon the conventional line. He says that it was not only agreed upon, but was so lived up to, recognized

and occupied to, by the parties on both sides of the line, and that it affords convincing evidence that Campbell's deed of the easterly part, and all the other deeds down to the defendant's were intended to convey to the recognized conventional line, and would do so by the insertion of a call from the brook to the northwest corner. He also relies upon the doctrine that when in a deed or grant the line is described as running from a given point, and this line is afterwards run out and located and marked upon the face of the earth by the parties in interest, and is afterwards recognized and acted upon as the true line, the line thus actually marked out and acted upon is conclusive, though it varies from the course given in the deed. *Knowles* v. *Toothaker,* 58 Maine, 172.

It is clear that this case does not come within the doctrine of *Knowles* v. *Toothaker,* supra. There is no evidence that the parties to this deed at the time of making the deed, or after, went upon the land and marked upon the face of the earth the line supposed to be described in the deed. The case rather falls within the rule that clear and unambiguous calls in a deed cannot be set aside and different ones substituted in their place by parol proof of the acts of the parties, either before or after the deed is made. *Ames* v. *Hilton,* 70 Maine, 36.

Whether or not there was a conventional line along the line C D, is material only as its existence may aid in the construction of the defendant's deed, and upon another phase of the case, upon the nature and extent of the defendant's occupation. It is well settled that a line agreed upon by the parties in interest and occupied up to for more than twenty years is conclusive, *Walker* v. *Simpson,* 80 Maine, 143, though it does not appear that the occupation has been such as would amount to a continuous disseizin for that time. *Faught* v. *Holway,* 50 Maine, 24. Possession in accordance with agreement after an acquiescence for twenty years gives title. *Moody* v. *Nichols,* 16 Maine, 23. The title does not pass to the occupier on either side by agreement, for that would contravene the statute of conveyances. It passes by disseizin. Each party claims and possesses to the agreed line adversely to the other, because of the agreement. *Moody* v. *Nichols,* supra. We do not conceive that a conventional line is defeated, although the original agreement was made by parties without title, but in possession, if after they acquired title the agreement was mutually understood to remain in

force, and possession accordingly was acquiesced in for twenty years.

But if there was a conventional line as claimed by the defendant, acquiesced in by the parties in interest for a time long enough to give title, we think it cannot aid the defendant here on the question of his title. However much those before him on the easterly side may have owned, the defendant got and now owns only what his deed conveyed to him. However much they may have intended to convey, they conveyed no more than the deeds properly construed conveyed. The defendant's deed fixes his westerly line by a course beginning where the easterly line of lot 18 intersects Campbell brook thence southerly by the brook to a post on the south side of the county road, thence southerly parallel with the easterly line of the lot to the rear line, etc. All prior conveyances of the easterly part by any persons having title were limited by the same courses. The construction of the deed is a matter of law. As matter of law, the brook was the boundary as far as the post, and a line parallel with the east line was the boundary from the post to the rear end of the lot.

The only question open is the location of the post. Unless controlled by other calls in the deed, or if ambiguous or uncertain, by extraneous evidence, we think by fair construction of the language, the post which was named as the terminus of the course by the brook should be regarded as in or by the brook, and not at an acute angle, nearly two hundred feet from the brook. There are no calls in the deed that suggest any other construction. There is no evidence that there ever was a post at the northeast corner of the disputed tract, except a stake already referred to stuck down as a guide, when the conventional line was run many years before the making of any of the deeds which refer to a post. If there was such a post, and it was intended that it should mark the beginning of the parallel line, it is evident that one call has been omitted from all the deeds of the easterly part of the lot. It is improbable that the error escaped notice so many times. We feel compelled to hold that the post referred to in the deed was a post at the brook, and that the defendant's title by deed extends no farther westerly than a line drawn parallel with the east line of the lot from the post to the rear end of the lot. There is evidence that Joseph Wildes, Jr., deeded a small tract of land westerly of this line to one Smith, and

Smith deeded it to Eaton. But Wildes had no title, and if he had had one, Eaton did not convey it to the defendant.

There is evidence from which a jury would be warranted in finding that the course of the brook at the road has been changed easterly not exceeding thirty feet since the date of the deed. The post therefore at that time may have been thirty feet westerly of the iron pin which the plaintiff describes in his writ as the beginning of the divisional line. And it follows that the defendant may own a thirty foot strip westerly of the line claimed by the plaintiff. If the case should be tried again, that fact may be determined by a special verdict, and judgment entered accordingly.

We have thus defined the limits of the defendant's title. But it is necessary to go further. The plaintiff is bounded on the east "by land occupied" by the defendant, not necessarily by land owned by the defendant. As already stated, in the absence of evidence to the contrary, occupation is presumed to be in accordance with the limits of ownership. But the presumption is rebuttable. There is some evidence that the defendant has occupied at times and for various purposes some portions of the disputed strip. He has cultivated a little of it. He has pastured a little of it. He has cut some wood and timber on the south part of it. It is not important now to go into the extent or effect of his occupation for these purposes. It is doubtful whether his occupation of small, detached tracts, and his occasional cutting of wood and timber, can be regarded as fixing a line of occupation, within the meaning of the plaintiff's deeds. There is no evidence that he has ever occupied any land west of Campbell brook as far south at least as the ash tree. So that, the plaintiff's deeds give him prima facie title at least to the land as far east as the brook and south to the ash tree. Indeed it may fairly be inferred from the evidence that some of the parties in interest on both sides, without much regard to their deeds, have supposed that the brook was the divisional line south of the road as well as north.

We conclude that upon the evidence the plaintiff is entitled to recover at least so much land as lies westerly of where the brook run in 1881. Therefore a verdict for the defendant for the whole of the disputed strip was unmistakably wrong. The exceptions are not considered.

*Motion for a new trial sustained.*