Casper G. SARGENT, Jr. and Teresa L. Sargent

v.

Phillip E. COOLIDGE and Edward G. Coolidge.

Supreme Judicial Court of Maine.

April 4, 1979.

Rehearing Denied May 11, 1979.

---

Frank B. Walker (orally), Ellsworth, for plaintiffs.

Libhart, Ferris, Dearborn & Willey by Wayne P: Libhart (orally), Ellsworth, for defendants.

Before McKUSICK, C. J., WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.[1]

On June 24, 1977 the plaintiffs brought their complaint to establish their title to a certain parcel of land, with the cottage thereon, in possession of the defendants as devisees under the will of their mother, Margaret M. Coolidge, situated in Trenton in the County of Hancock. The Sargents base their right to recover the real estate in dispute upon a quitclaim deed of the premises dated January 23, 1970 containing personal covenants of warranty against third party claims through their grantors, Paul S. Spates and Dorothy M. Spates, the Spates in turn having received a similar deed under date of January 31, 1968 from the defendants' mother. The case was tried without jury before a single Justice of the Superior Court who concluded that the plaintiffs had failed to prove their cause of action by a fair preponderance of the evidence and ordered judgment for the defendants. The plaintiffs appeal to this Court from the ensuing judgment. We sustain the appeal.

■ The instant complaint was brought pursuant to Rule 80A, M.R.Civ.P. and 14 M.R.S.A., §§ 6701–6712, §§ 6801, 6802, §§ 6901, 6902. Although the Maine Rules of Civil Procedure, adopted in 1959, purport to govern the procedure in the Superior Court in all suits of a civil nature, whether cognizable as cases at law or in equity (Rule 1, M.R.Civ.P.), they do not displace the substantive body of law created under the separate and distinct concepts of law and equity which existed prior to the promulgation of the rules. The former distinction between actions at law and proceedings in equity remains viable within the single forum court, the statement of the claim determining whether relief is sought upon a right enforceable at law or in equity. As stated in Maine Civil Practice, Field, McKusick and Wroth, 2nd Ed., § 2.1, at page 35:

> "The purpose of this rule [that there shall be one form of action to be known as "civil action"] is to abolish the common law forms of action and to effect a procedural merger of law and equity. Every action brought under this rule is denominated a 'civil action,' and its historical ancestry whether legal or equitable is of no moment. *The right to a specific kind of legal or equitable relief upon proof of certain facts remains as it has been under prior practice.* A party makes known in his demand for relief what it is that he wants, and in obtaining it he is not shackled by the formalisms of the common law or the niceties of equity procedure." (Emphasis supplied)

■ There is no doubt the present complaint is one at law, formerly commenced by a writ of entry, as the plaintiffs in their complaint declare on their own seizin within 20 years then last past and on a disseizin by the defendants, claiming an estate in fee simple, all as provided by Rule 80A(c), M.R. Civ.P.[2]

At the close of all the evidence, the presiding Justice made the following pertinent findings of facts, as follows:

> "First, I am going to accept the testimony of the surveyor, Richard Salsbury, since he has testified that he could find the starting point in the deed described as plaintiffs' exhibit two and four, and there has been no contrary evidence, so I am accepting that as a fact.
>
> "And, I arrive at the conclusion there is no ambiguity in the deed itself. It does describe a parcel of land that can be located on the face of the earth. That

---

1. Sitting by assignment.

2. Rule 80A(c) Complaint. The demanded premises shall be clearly described in the complaint. The plaintiff shall declare on his own seizin within 20 years then last past, without naming any particular day or averring a taking of the profits, and shall allege a disseizin by the defendant. The plaintiff shall set forth the estate which he claims in the premises, but if he proves a lesser estate than he has alleged, amendment may be made to conform to the proof and judgment ordered accordingly. The plaintiff need not state in his complaint the origin of his title, but the court may, on motion of the defendant, order the plaintiff to file a statement of his title and its origin. . . ."

description contained in the deed contains a parcel of land located south [north] of the division line between lots 29 and 30. The problem that arises, however, is two-fold, and maybe many more. First, the evidence has indicated to this Court that there is not sufficient land south [north] of the division line between 29 and 30.

"Mr. Walker: I think it's north.

"The Court: I get my north and south mixed up. There's not sufficient land *north* to fill the bounds of this property. Also that this parcel of land describes land that contains this cottage that is presently in the possession of the defendants. [Emphasis added]

"I am further finding as a fact it was never the intention of the grantor, the original grantor, Margaret Coolidge, to sell the property. There again, I am going to get my north and south mixed up. She never intended to sell the property that contains the cottage, which is north of the line, the division line of 29 and 30. It was always her intention to sell that land south of the division line, which has been described by the defendant as being a clear parcel of land without any cottage on it.

"I further find as a fact, the original grantee, although there is no evidence to suggest it, however, I feel I can from all the testimony I have heard come to a conclusion, that Paul and Dorothy Spates also did not intend to purchase any land other than that parcel of land south of the division line between lots 29 and 30.

"To take it one step further, of course, this Court concludes from the evidence, that the present plaintiff, Mr. Sargent, also did not intend to possess or own any other land than that which is located south of the division line between lots 29 and 30.

"Now, it appears to me to be an elementary principle of law, one sells and one buys only what they intend to sell and what they intend to buy. There's no doubt in my mind the only obvious conclusion I can come to is that there was an error made in the original deed. The division line between 29 and 30 was never

used in that deed, so consequently, even with this description here, someone made a mistake and wrote a deed which does not encompass a land that was intended to be sold, nor intended to be purchased.

"Now, what the plaintiff is seeking as a remedy is to impose upon the heirs of the original grantor an obligation to make good an error, and there was no suggestion that it was anything else but an honest error, and was never intended to be otherwise. I am certain the plaintiff has a remedy. The problem is whether he chose the proper remedy. Unfortunately, in this case, he sought the remedy and is attempting to impose upon the heirs of the original grantor, the obligation to turn over to him all the land that they own north of this division line between 29 and 30, which does not encompass the full amount of land that was intended to be sold in the first place to the plaintiff. I must unfortunately state that I don't feel the present defendants are obligated to remedy the obvious error that was made at that time. I am granting judgment for the defendant in this case."

The presiding Justice ordered judgment to be entered for the defendants on the ground that the plaintiffs had failed to prove their cause of action by a fair preponderance of the evidence. In this, he committed error as a matter of law.

Initially, let us dispose of certain arguments raised by the appellees which differ from the ground upon which the presiding Justice based his conclusion and which they claim support his decision.

■ First, it is claimed that the instant complaint was fatally deficient in that it did not clearly describe the premises demanded as required by Rule 80A(c), M.R. Civ.P. See note 2. The purpose behind the rule which mandates a clear description of the premises demanded is to provide a defendant with notice of what lands are involved to such a reasonable degree of certainty that he may identify the property at issue and protect his interests by proper

pleading or disclaimer as the case may be. See *Merrow v. Norway Village Corp.*, 118 Me. 352, 108 A. 325 (1919); *Rand v. Skillin*, 63 Me. 103 (1873). See also *Page v. Nissen*, Me., 254 A.2d 592, 594 (1969).

■■ Here, the Justice below expressly found that there was no ambiguity in the deed itself, a conclusion with which we agree. The construction of a deed is a matter of law. See *C Company v. City of Westbrook*, Me., 269 A.2d 307 (1970). In so doing, he implicitly found that the description of the premises in the complaint was similarly clear and unambiguous, since the complaint description tracks exactly the deed delineation.

The presiding Justice further made a finding of fact to the effect that the deed, and by implication the complaint, describes a parcel of land that can be located on the face of the earth, and that, from the evidence, the parcel of land described in the deed and complaint was as a matter of fact lying northerly of the division line between lots 29 and 30, so-called, or northerly of the southerly line of Margaret M. Coolidge's land, meaning the lot with the cottage thereon presently occupied by the defendants. In this, we cannot say that he was clearly wrong. In reaching this conclusion, the Superior Court Justice accepted the testimony of the witness surveyor that he could find the starting point in the deed. The surveyor had traced the title back to 1852. Furthermore, the Justice may have taken into consideration the fact that the title to the described land had been researched by attorney and that a certificate of title had been given.

■ The weight to be given to the opinions of surveyors, as well as the credibility of any witness, is the prerogative of the trier of facts, here the single Justice. *Rusha v. Little*, Me., 309 A.2d 867 (1973); *Perkins v. Conary*, Me., 295 A.2d 644 (1972); *Sowles v. Beaumier*, Me., 227 A.2d 473 (1967).

■ While the question of determining what are the boundaries of the land which a deed purports to delineate is a question of law (*Rusha v. Little*, supra), where those boundaries are located on the surface of the earth is a question of fact to be resolved by the trier of facts. *Perkins v. Conary*, supra; *McCausland v. York*, 133 Me. 115, 174 A. 383 (1934).

■ Where questions of fact are involved, a ruling of a single justice will not be set aside on appeal unless clearly erroneous (Rule 52, M.R.Civ.P.), i. e. unless the appellate court is convinced by clear evidence of record that the holding below is patently incorrect. *Boynton v. Adams*, Me., 331 A.2d 370 (1975); *Pratt v. Moody*, 157 Me. 162, 169, 170 A.2d 389 (1961).

■ The mere fact that the plaintiffs have demanded in their complaint more than they can recover will not bar their recovery of the specific part of the premises to which they have proven title. A clear description of a greater area of land than one can prove title to is sufficient identification of any included portion thereof, title to which is established by the fair preponderance of the evidence, to satisfy the requirements of Rule 80A(c) mandating a clear description in the complaint of the premises demanded. *May v. Labbe*, 114 Me. 374, 96 A. 502 (1916).

■ From the evidence in this record, it is clear that the Justice below properly found that the plaintiffs' deed identifies land occupied by the defendants on which their mother's cottage is situated. It is apparent, however, that the third and fourth bounds as set out in the deed cannot be satisfied as to distances because of previous conveyances by Mrs. Coolidge out of her original holdings; also, that the configuration of the lot as a square piece of land as described in the plaintiffs' deed and complaint cannot be carried out on the face of the earth. Such faulty portion of the description consisting in stating distances over or under true lengths will be disregarded. The same would be true respecting the discrepancy between the apparent faulty projection as to the shape of the lot described and its true topographical aspect. See *Abbott v. Abbott*, 53 Me. 356, 361 (1865).

"It is a familiar principle in the construction of deeds that however false the description may be in its particulars, if there is sufficient of the true remaining, to ascertain fairly what was intended to be conveyed, the false shall be rejected and the true retained." *Getchell v. Whittemore*, 72 Me. 393, 396 (1881).

With this principle of law in mind, we hold that the plaintiffs' complaint (as well as their deed) contains a clear description of the demanded premises within the scope of Rule 80A(c), and that, excepting for the present the theory upon which the Superior Court Justice made his ruling, the plaintiffs have proven a deed title to a specific part of the demanded premises, which contains the land and cottage occupied by the defendants. 14 M.R.S.A., § 6703; Rule 80A(f), M.R.Civ.P.[3]

■ Secondly, the defendants argue that the judgment in their favor was proper, because the plaintiffs failed to bring themselves within Rule 80A(b) and 14 M.R.S.A., § 6701, both of which, so far as pertinent to the instant case, limit real actions to the recovery of "[a]ny estate in fee simple, in fee tail, for life or for any term of years." In this, the defendants are mistaken. Both deeds, from Mrs. Coolidge to the Spates and from the Spates to the plaintiffs, although of the quitclaim variety, carried words of inheritance in the granting and habendum clauses, to wit, "their heirs and assigns, and the survivor of them, and the heirs and assigns of the survivor of them, forever." Such descriptive language is the usual and recognized formalism used to convey an estate in fee simple. *Wilson v. Chadbourne*, Me., 395 A.2d 445 (1978). See also *Goodwin v. Boutin*, 130 Me. 322, 155 A. 738 (1931); *Webber v. McAvoy*, 117 Me. 326, 104 A. 513 (1918).

■ Thirdly, the defendants seek support for their judgment below on the ground that the plaintiffs neither proved actual seizin in themselves, nor actual disseizin by the defendants. Whatever may have been the rule at common law, present statutory law dispenses with proof of the same. In section 6702 of title 14, M.R.S.A., it is provided that

"[n]o such action shall be maintained unless, at the time of commencing it, the plaintiff had such right of entry. . . ."

In section 6801 of title 14, it is stated that

"[e]very person alleged to be in possession of the premises demanded in such action, claiming any freehold therein, may be considered a disseizor for the purpose of trying the right."

■ Thus, although the plaintiffs' seizin and the defendants' disseizin are necessary allegations of a good complaint in a real action (Rule 80A(c)), such mandated averments are only procedural devices to raise the issue of title to the demanded premises. Having complied with these prerequisite assertions, the plaintiffs then had, as the only burden cast upon them by the pleadings, to prove that they had a better title than the defendants. *Daly v. Lewiston & Auburn Children's Home*, 113 Me. 526, 95 A. 219 (1915); *Bowie v. Landry*, 152 Me. 88, 122 A.2d 774 (1956). See also *Boynton v. Adams*, Me., 331 A.2d 370 (1975); *Hann v. Merrill*, 305 A.2d 545 (1972).

This conclusion is inescapable, if we take into consideration that the strictures of the common law have been effectively abrogated by statute within the first quarter century of statehood. For a view of some of the common law restrictions respecting land transfers, reference may be had to the com-

---

**3.** 14 M.R.S.A., § 6703 reads as follows:

"The plaintiff may recover a specific part or undivided portion of the premises to which he proves a title, although less than he demanded."

Rule 80A(f), M.R.Civ.P., in pertinent part, states as follows:

"The judgment shall declare the estate, if any, in all or in any part of the demanded premises to which the plaintiff is entitled; . . . ."

ments of Judge Trowbridge of the Superior Court of Judicature of Massachusetts at 3 Mass. 573 et seq.

Our present statutes governing real estate transfers, together with Rule 80A, M.R.Civ.P. regulating real actions, are merely declaratory of the comprehensive statutory legislation on the subject enacted by the Legislature in 1840–41.

33 M.R.S.A., § 151, stating in part that

"[a] person owning real estate and having a right of entry into it, whether seized of it or not, may convey it or all his interest in it, by a deed to be acknowledged and recorded as provided in this chapter. . . ."

is identical to R.S. 1841 c. 91, § 1, except in more concise language. The 1841 statute provided that

"[w]hen any person shall make a deed of any lands or other real estate, owned by him in severalty, . . . acknowledged and recorded in the manner prescribed in this chapter, whether at the time of the execution and delivery of the deed he is seized, or not seized, of such lands, or estate, but to or for which he has a right of entry, such lands or estate, or all the title or interest, which the grantor has in and to the same, shall pass by such deed of conveyance, as effectually as if the grantor was, at the time of the conveyance, seized of the same."

14 M.R.S.A., § 6701, providing that

"[a]ny estate in fee simple, in fee tail, for life or for any term of years may be recovered by a real action,"

implemented as it is by Rule 80A(b), M.R. Civ.P., stating that

"[a]n action to recover any estate in fee simple, in fee tail, for life, or for any term of years shall be commenced by complaint and service of summons as in other civil actions,"

gives the same relief which the Revised Statutes of 1841 made available in chapter 145, § 3, which read:

"Any estate of freehold, whether in fee simple, fee tail or for life, may be recovered by a writ of entry."

The same is true of the other statutory prerequisites attached to any real action such as:

1) 14 M.R.S.A., § 6702. "No such action shall be maintained unless, at the time of commencing it, the plaintiff had such right of entry. . . ." The identical language will be found in Revised Statutes of 1841, c. 145, § 7.

2) Section 6801, of Title 14, M.R.S.A., "[e]very person alleged to be in possession of the premises demanded in such action, claiming any freehold therein, may be considered a disseizor for the purpose of trying the right," and section 6802, "[i]f the person in possession has actually ousted the plaintiff or withheld the possession, he may, at the plaintiff's election, be considered a disseizor for the purpose of trying the right, although he claims an estate therein less than a freehold," are worded the same as sections 9 and 10 of the revised statutes of 1841.

3) 14 M.R.S.A., § 6901, which directs that

"[t]he plaintiff need not prove an actual entry under his title; but proof that he is entitled to an estate in the premises and that he has a right of entry therein is sufficient proof of seizin,"

is a simplified version of R.S. 1841, c. 145, § 6:

"The demandant shall not be required to prove an actual entry under his title, but proof, that he is entitled to such an estate in the premises, as he claims, as heir, devisee, purchaser, or otherwise, and also that he has a right of entry therein, shall be deemed sufficient proof of the seizin, alleged in the declaration."

4) 14 M.R.S.A., § 6902, which reads that, "[i]f the plaintiff proves that he is entitled to an estate in the premises and had a right of entry therein when he commenced his action, he shall recover the premises, unless the defendant proves a better title in himself," is identical in language to the provisions of R.S. 1841, c. 145, § 11.

5) Revised Statutes, 1841, c. 145, § 4, which mandated that "[t]he demandant shall de-

clare on his own seizin, within twenty years then last past, without naming any particular day, and shall allege a disseizin by the tenant; . . .," was part of our statutory law until 1959 (see R.S. 1954, c. 172, § 2), when Rule 80A(c) was promulgated in the same terminology.

This led our Court to remark in connection with real actions in *Morse v. Sleeper*, 58 Me. 329, 335 (1870):

"With us the form of the pleadings and the character of the issue to be tried, and the burden imposed upon each of the litigating parties, respectively, to entitle him to prevail, are all regulated by statute [now by statute and Rule 80A(c)]."

In *Hovey v. Hobson*, 51 Me. 62, 66, 67 (1863), our Court stated:

"These statutes dispense with the formality of livery of seizin, required by the common law, . . . and put every person who brings a writ of entry upon the strength of his own title. If he has the ownership, and the right of entry, his right to maintain his action is perfect. The meaning of these statutes is clear and unambiguous as language can make it. . . . they place property which a disseizee owns, and has a right of entry to, upon the same footing in respect to the right of conveyance with other property where the elements of ownership and seizin are united. . . . . The plaintiff having introduced his recorded deed of the demanded premises, and shown the heirship of his grantor together with his right of equity, was entitled to maintain his action, unless the defendant showed a defect in his title, or a better and paramount title in himself."

See also *Pratt v. Pierce*, 36 Me. 448, 58 Am.Dec. 758 (1853).

 We do recognize that the plaintiff in a real action has the burden of proof of his title. *Spencer v. Bouchard*, 123 Me. 15, 16, 121 A. 164 (1923); *Day v. Philbrook*, 89 Me. 462, 467, 36 A. 991 (1897). Proof of both the right of entry at the time of the commencement of the action, and of such an estate in the premises as he has alleged, is necessary before the plaintiff can recover, even though the defendant shows no title in himself. In other words, a plaintiff in a real action must recover, if at all, upon the strength of his own title. *Powers v. Hambleton*, 106 Me. 217, 76 A. 675 (1909); *Wyman v. Porter*, 108 Me. 110, 79 A. 371 (1911). In the instant case, even though Mrs. Coolidge remained on the premises, when she conveyed to the Spates the land described in her deed and in the plaintiffs' complaint, the Spates acquired an estate in fee simple in the property and the right of entry therein, both of which they conveyed to the plaintiffs by their own deed of conveyance.

In *Blethen v. Dwinel*, 34 Me. 133 (1852), our Court said that

"[a] deed of conveyance acknowledged and recorded is equivalent to feoffment with livery of seizin. The legal presumption is, that seizin follows the title and that they correspond with each other.

"In the absence of other evidence, the deed, itself, raises a presumption that the grantor had sufficient seizin to enable him to convey, and also operates to vest the legal seizin in the grantee.

"The deeds introduced by the demandant, *prima facie*, established his title." (Emphasis in original)

The *Blethen* rule was applied in the case of all deeds of conveyance of lands, including deeds of quitclaim, as distinguished from deeds where only the grantor's "right, title and interest" in the land is transferred. See *Blethen v. Dwinel*, supra; *Hooper v. Leavitt*, 109 Me. 70, 82 A. 547 (1912); *Inhabitants of Town of Canton v. Livermore Falls Trust Co.*, 136 Me. 103, 3 A.2d 429 (1939).

Such decisions undoubtedly resulted from the statutory provision, R.S. 1841, c. 91, § 8, which provided that

"[a] deed of release or quitclaim, of the usual form in this state, shall pass all the estate which the grantor had and could convey, by a deed of bargain and sale."

To the same effect is 33 M.R.S.A., § 161, which uses the phraseology "by a deed of any other form," instead of the expression "by a deed of bargain and sale."

Notwithstanding the above statutory enactment, it would appear that our Court has interpreted the same as not applicable to quitclaim deeds that convey only the "right, title and interest" of the grantor in land as distinguished from a deed of conveyance, quitclaim or otherwise, which conveys the land itself. And, thus, our Court has continued to hold that a quitclaim deed merely of "a right, title and interest" in land is not a grant of the land itself nor of any particular estate in the land, and is not prima facie evidence of title. *Hill v. Coburn,* 105 Me. 437, 452, 75 A. 67 (1909); *Butler v. Taylor,* 86 Me. 17, 23, 29 A. 923 (1893); *Nash v. Bean,* 74 Me. 340 (1883); *Coe v. Persons Unknown,* 43 Me. 432 (1857). The rule seems to be otherwise, however, where the predecessor of the quitclaim deed claimant either had obtained his title by warranty deed or was actually in possession of the land. See *Dudley v. Varney,* 152 Me. 164, 126 A.2d 285 (1956); *Rand v. Skillin,* 63 Me. 103 (1873); *Tebbetts v. Estes,* 52 Me. 566 (1864).

■ In the instant case, the deeds from Mrs. Coolidge to the Spates and from the Spates to the plaintiffs, although labelled quitclaim deeds, did not purport to convey only the "right, title and interest" which the common grantor, Mrs. Coolidge, had in the property described in the deeds. In fact, the words "right, title and interest" do not appear at all. The granting clause uses the terminology "do hereby remise, release, *bargain, sell and convey* and forever quitclaim . . . a certain lot or parcel of land situated in Trenton, Hancock County, Maine, bounded and described as follows: [etc.]" (Emphasis supplied). Such a deed, although combining terms of "remise release and forever quitclaim," is also a deed of bargain and sale, which conveys seizin without the need of a subsequent entry and an estate in the land itself. It is a conveyance of the land, as distinguished from a

mere grant of a "right, title, and interest" in the land, is prima facie evidence of title and is sufficient to prove absolute ownership. *Shaw v. Merrill,* 131 Me. 441, 163 A. 792 (1933); *Hooper v. Leavitt,* 109 Me. 70, 82 A. 547 (1912); *Wyman v. Brown,* 50 Me. 139 (1863). See also *Goodwin v. Hubbard,* 15 Mass. 210 (1818).

■ Since the plaintiffs made a prima facie case of title in themselves through the conveyance from Mrs. Coolidge, in order to defeat the plaintiffs' claim the defendants then had to prove that the plaintiffs had no title or that the defendants themselves had a better title than the plaintiffs did. *Hovey v. Hobson,* 51 Me. 62 (1863). Where both parties claim through Mrs. Coolidge, the common grantor, the plaintiffs through their deeds have shown a better title than the defendants who have possession of the premises only by virtue of the devise from Mrs. Coolidge. *Wyman v. Brown,* 50 Me. 139 (1863). Since Mrs. Coolidge at the time of her death had already conveyed away the lands described in her deed to the Spates, her will did not affect the property in any manner whatsoever. She did not own that property to pass along by will.

■ Furthermore, absent any fraud in the transaction between the Spates and Mrs. Coolidge, and there is no question that both parties acted in good faith so far as the execution and delivery of the deed between them is concerned, Mrs. Coolidge would have been precluded in an action at law from contesting the efficacy of her deed and the conveyance of her title to the lands described therein. The defendants as Mrs. Coolidge's devisees stand in her shoes. See *Goodwin v. Boutin,* 130 Me. 322, 325, 155 A. 738 (1931). It is not to be presumed that Mrs. Coolidge, when she gave her deed, did not intend to convey anything. Rather, the reverse is true. *Patterson v. Snell,* 67 Me. 559 (1877).

Nonetheless, we will address the issue, whether the Superior Court Justice was correct in granting judgment for the defend-

ants on the theory of mutual mistake of the parties respecting the subject matter of the deed of conveyance. In other words, was the presiding Justice in error in his ruling to the effect that, since the minds of parties to the original transaction did not meet respecting the subject matter of the deal, the deed from Mrs. Coolidge to the Spates was a nullity and no title passed, leaving the plaintiffs who purchased from the Spates in the identical situation?

■ The cardinal rule in the interpretation and construction of deeds, as in the case of any contract, is to seek to ascertain the intention of the parties. *C Company v. City of Westbrook*, Me., 269 A.2d 307, 309 (1970).

But, in an action at law, it is the intention of the parties as appears from the deed itself that controls. *Rusha v. Little*, Me., 309 A.2d 867 (1973); *Perkins v. Conary*, Me., 295 A.2d 644 (1972).

■ The language used by Mrs. Coolidge in her deed to the Spates is clear and unambiguous. It describes a parcel of land which the Justice below found as a fact can be delineated upon the surface of the earth, albeit it overlaps the amount of land which she owned at the time. Her description is anchored upon "a point in high water mark of Union River Bay, which point is in the southerly side line of the premises described as conveyed to . . . [her] by Nettie L. Moore, by deed dated September 25, 1954, and recorded in Hancock County, Maine, Registry of Deeds, in Book 764, Page 148," and the southerly line of the lot she purported to convey by her deed was described as following the southerly side line of the premises conveyed to her by Moore. Where other side lines of the lot described are made to depend upon a specific boundary line of the parcel of land conveyed, the reference boundary line, if it can be located on the face of the earth, becomes a monument to which stated distances in the deed must yield. Cf. *Rusha v. Little*, supra; *Hardison v. Jordan*, 141 Me. 429, 44 A.2d 892 (1945).

■ Should the ruling below prevail, then the grantees from Mrs. Coolidge would have acquired nothing through the conveyance, as her deed description can only identify a piece of land north of the division line between lots 29 and 30, so-called, (Mrs. Coolidge's southerly line of her land ownership). Such a ruling, based on the purported intention of the parties gathered from sources outside the four corners of the deed of conveyance, comes into direct conflict with the presumption which the law raises to the effect that the grantor intended to convey something. *Pelletier v. Langlois*, 130 Me. 486, 157 A. 577 (1931); *Vose v. Bradstreet*, 27 Me. 156 (1847).

■ Furthermore, such a ruling is in contravention of recognized rules of real estate conveyancing. The rule has been well stated in *McLellan v. McFadden*, 114 Me. 242, 246–247, 95 A. 1025, 1028 (1915):

"In construing the grant we are to give effect, if possible, to the intention of the parties, so far as it can be ascertained in accordance with legal canons of interpretation. We are to give effect to the expressed, rather than the surmised, intent. We are to consider all the words of the grant in the light of the circumstances and conditions attending the transaction. But we must consider and construe the grant according to settled rules of construction. They are rules of property. *And the security of real estate titles depends upon a strict adherence to these rules of construction.*" (Emphasis added)

In *Perkins v. Conary*, Me., 295 A.2d 644, at 646 (1972), this Court stated:

"The applicable principles of law are well settled. The intention of the parties, ascertained from the deed itself, ordinarily must prevail. However, to secure the certainty, precision and permanency of muniments of title, certain positive rules of law have evolved *which are made to control* and parties to real estate transactions must heed the same, if they would effectuate their intent, or avoid conse-

quences they did not intend." (Emphasis provided)

See also *McElwee v. Mahlman*, 117 Me. 402, 406, 104 A. 705 (1918); *Perry v. Buswell*, 113 Me. 399, 94 A. 483 (1915).

The deed from Mrs. Coolidge to the Spates is clear and there is no latent ambiguity in its language which needs to be explained in order to apply its descriptive wording to the face of the earth. Under such circumstances, extrinsic evidence of the mode of occupancy by the parties under the deeds or of their declarations at the time of the delivery of the deeds or thereafter cannot be received for the purpose of modifying the legal effect of such deeds in an action at law. *Parkman v. Freeman*, 121 Me. 341, 117 A. 301 (1922); *Mitchell v. Smith*, 67 Me. 338 (1876); *Pierce v. Faunce*, 37 Me. 63 (1853). See also *Oakland Woolen Co. v. Union Gas and Electric Co.*, 101 Me. 198, 63 A. 915 (1906).

In the instant case, the Justice of the Superior Court received in evidence testimony of the parties which tended to prove that the intended subject matter of the transaction between Mrs. Coolidge and the Spates was not the parcel of land described in the Coolidge-Spates deed, but a piece of land south of the parcel actually conveyed.[4] But parol evidence, even if admitted without objection, is incompetent in a real action at law to contradict the terms of a deed and defeat the conveyance. *Shaw v. McKenzie*, 131 Me. 248, 160 A. 911 (1932); *Elwell v. Borland and Sexton*, 131 Me. 189, 160 A. 27 (1932); *May v. Labbe*, 114 Me. 374, 96 A. 502 (1916); *Munsey v. Hanly*, 102 Me. 423, 67 A. 217 (1907); *Fall v. Fall*, 100 Me. 98, 60 A. 718 (1905); *Phillips v. Laughlin*, 99 Me. 26, 58 A. 64 (1904); *Pride v. Lunt*, 19 Me. 115 (1841).

Assuming that Mrs. Coolidge thought her southerly line on the face of the earth was located some one hundred and seventy-five feet southerly from its actual establishment as fixed by the expert witness, the surveyor, and that the Spates also supposed they were buying land in this southerly area, the mere fact that a mutual mistake of fact respecting the subject matter of their transaction existed in the minds of the parties to the purchase and sale did not render the deed executed to make the conveyance null and void. At most, it would be voidable only. *Tilbury v. Osmundson*, 143 Colo. 12, 352 P.2d 102 (1960); *Maloy v. Smith*, 341 P.2d 912 (Okl.1959).

This Court on numerous occasions has indicated that reformation or cancellation of deeds for mutual mistakes respecting the subject matter of the conveyance may be had on the equity side of the court. *Andrews v. Andrews*, 81 Me. 337, 17 A. 166 (1889); *Jewett v. Hussey*, 70 Me. 433 (1879); *Burr v. Hutchinson*, 61 Me. 514 (1873); *Young v. McGown*, 62 Me. 56 (1873); *Farley v. Bryant*, 32 Me. 474 (1851). See also *Perron v. Lebel*, Me., 256 A.2d 663 (1969); *Davis v. Davis*, Me., 255 A.2d 903, 905 (1969).

"A deed which, through the ignorance or heedlessness of the scrivener, misrepresents the bargain between the parties, may doubtless be reformed in equity; but until that is done, it must be allowed to have, in a suit at law, all its legitimate effect according to its terms." *Spencer v. Bouchard*, 123 Me. 15, 18, 121 A. 164, 166 (1923), quoting from *Hines v. Robinson*, 57 Me. 324, 330 (1869).

In *Strickland v. Rollins*, 122 Me. 334, 120 A. 43 (1923), this Court stated that an ex-

---

4. Counsel for the defendants sought to justify the admissibility of such evidence on the theory of a family history respecting the intention of their mother in regards to the lot south of the land on which the cottage is situated. The mere labelling of the intended evidence as family history did not make it admissible. Hearsay is not admissible except as provided by law or by our Maine Rules of Evidence (Rule 802, M.R.Evid.), and the so-called family-history testimony did not come within any of the exceptions provided under Rules 803 or 804, M.R. Evid. Rule 803 reaches only statements of fact concerning personal or family history contained in family Bibles, genealogies, charts, engravings on rings, inscriptions on family portraits, engraving on urns, crypts, or tombstones, or the like. Rule 804 merely allows statements concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history.

ception in a deed, even if inserted therein by error, could not be removed in an action at law and was operative so long as the exception remained in the deed. Deletion of the exception by reformation of the deed would have to be sought in a court of equity.

In *Bell v. Morse*, 6 N.H. 205, 209 (1833), it was held that

"in a court of law, where a particular tract of land is granted, by a deed, in clear and express terms, the grantor, and those claiming under him, are estopped to say that the land, thus described in the deed, was inserted by mistake, and that another tract, and not that, was intended to be granted."

Such is our own common law, as expressed in Massachusetts cases prior to the separation. *Paine v. M'Intier*, 1 Mass. 69 (1804). See *Townsend v. Weld*, 8 Mass. 146 (1811); *Leland v. Stone*, 10 Mass. 459 (1813).

That Mrs. Coolidge believed the cottage was on land she thought she was retaining is not sufficient in a real action at law to deprive the plaintiffs of their land. See *Mayer v. Fuller*, Me., 248 A.2d 140 (1968).

Mrs. Coolidge's deed to the Spates did not purport to convey the cottage which, the parties agree, is occupied by the defendants. The record does not disclose whether the cottage could be viewed as personal property and removable, nor does it tell us what, if any, capital improvements may have been made to it, while the plaintiffs may have stood by without any warning on their part to the defendants that the cottage was theirs. A remand mandating a judgment for the plaintiffs at this point might produce an unconscionable result. If equitable relief were sought by the defendants, whether by way of cancellation or reformation of the deed, a court of equity could then balance the equities between the parties and reach an equitable result.

Hence, the case will be remanded to the Superior Court for the purpose of permitting the defendants to amend their answer accordingly and for further proceedings thereafter.

We are aware that costs on appeal shall be taxed against the unsuccessful party unless the Law Court otherwise directs. Rule 76(a), M.R.Civ.P. We have decided against any "direction otherwise" in this case, because it was conceded at oral argument that the defendants' failure to seek equitable relief at the Superior Court level was procedural strategy on the part of counsel. If the defendants had sought equitable relief in the trial court, there might have been no occasion to appeal, and judicial economy would have been promoted. We believe that our exercise of discretion in relieving parties from the taxation of costs should be used sparingly, and only in favor of the diligent.

The entry will be

Appeal sustained.

Judgment below set aside.

Remanded to the Superior Court to allow the defendants to amend their answer, should they so desire, within 30 days from the date of notice to the defendants of this remand for the purpose of counterclaiming for equitable relief, and, if such amendment is forthcoming, then for further proceedings in the case on the equity side of the court, consistent with this opinion. If such amendment of answer is not filed within the time provided, then judgment is to be entered for the plaintiffs against the defendants for that part of the premises described by the plaintiffs in their complaint, excluding, however, any portion thereof which may have been conveyed away to other parties by Mrs. Coolidge at the time of the conveyance to the Spates.

POMEROY and DELAHANTY, JJ., did not sit.