STATE OF MAINE

AROOSTOOK, ss

SUPERIOR COURT
CIVIL DOCKET
DOCKET NO. CARSC-CV-16-055

GERARD OUELLETTE and )
ADRIENNE OUELLETTE )
         PLAINTIFFS )
vs. )      ORDER AND DECISION
 )
 )
 )
LABONTE INVESTMENT )
REALTY,LLC )
       DEFENDANT )

## BACKGROUND

By a Complaint dated July 23, 2015, the Plaintiffs seek a declaratory judgment establishing that they are the owners of a 400' X 600' parcel of land located at 484-490 Lakeshore Road in Madawaska, Maine that was excepted from Parcel Seven of a mortgage the Plaintiffs granted to Peoples Heritage Bank in May, 2000, recorded at Northern District of Aroostook Registry of Deeds (hereafter NDARD) Bk. 1209, p.98. Trial was held on Plaintiff's Complaint and Defendant's Counterclaim on June 27 and 28, 2017. In dispute is where, on the face of the earth, the excepted parcel is located, described in the mortgage, to wit:

*Excepting and Reserving Therefrom the following premises: A certain piece or parcel of land, with buildings thereon, being part of Original Lot No. One Hundred Fifty Three(#153) and/or Original Lot No. One Hundred Fifty Four (#154) and more particularly described as being approximately four hundred(400) feet in depth and six hundred(600) feet in length and consisting of the primary residence and surrounding pond of Gerard and Adrienne Ouellette, husband and wife.*

As indicated, this 400' X 600' parcel first came into existence when the Plaintiffs conveyed to Peoples Heritage Bank a mortgage dated May 18, 2000 recorded at NDARD Bk. 1209, p. 98 which pledged several parcels of farm land. (Plaintiff Exhibit 3) The mortgage secured two loans totaling $1,110,000. Parcel Seven (Ouellette Farm) of the mortgage description conveyed a strip of land 40 rods in width in Lots #153 and #154. At its westerly side the 40 rod strip is dissected by Lake Shore Road. The Plaintiff's source of title to this 40 rod strip of land derived from a deed recorded at NDARD Bk. 399, p. 221, Parcel #3. (Plaintiffs' Exhibit 1)The 400' X 600' parcel was excepted from said

1

mortgage conveyance, meaning when the Plaintiffs mortgaged the farm land to Peoples Heritage Bank, the 400' X 600' parcel was not included.

Situated in the 40 rod strip and adjacent to Lake Shore Road is a pond constructed by the Plaintiffs, and several buildings related to potato operations. On the east side of Lake Shore Road is the pond, a machine shed, Quonset hut, packing shed and fuel pumps, and also a dwelling type residence. At a prior time the dwelling was the Plaintiffs' residence, but at the time of the mortgage it was used as an office with an upstairs apartment. This dwelling will hereafter be referred to as the *original house or home.* On the west side of the road are three additional buildings for potato storage and truck maintenance. (See Plaintiffs' Exhibit 11 and Defendant's Exhibit H).

Immediately adjacent and to the north of the 40 rod strip of land the Plaintiffs own a 30 rod wide strip of land, described as being in Lots #153 and #154, by a deed recorded at NDARD Bk. 343, p. 291.[1] (Plantiffs' Exhibit 2). Situated on this 30 rod strip of land is a residence constructed by the Plaintiffs in 1976, and have since resided as their principal residence, including in the year 2000 when the 40 rod strip of land was mortgaged to Peoples Heritage. For about 10 years prior to 1976, Plaintiffs lived in a trailer located on the same lot. The address of this property is known as 454 Lake Shore Road, and the home situated thereon will hereafter be referred to as the *new house or home.* . ( Again, see Plaintiffs' Exhibit 11 and Defendant's Exhibit H).

Ultimately, Peoples Heritage Bank foreclosed on its mortgage recorded at NDARD Bk. 1209, p. 98, acquiring title to Parcel Seven which contained the 40 rod strip of land subject to the exception for the 400' X 600' parcel. Peoples Heritage sold the foreclosed property, including the aforementioned buildings, to Lionel Labonte by a deed recorded at NDARD Bk. 1491, p. 343.(Plaintiff's Exhibit 8). Subsequently, Lionel Labonte conveyed title to the 40 rod strip and buildings, excepting the 400' X 600' piece, to the Defendant, Labonte Investment Realty, LLC by a deed recorded at NDARD Bk. 1862, p. 154 (Defendant's Exhibit F).

There is no question the objective of the exclusion was to exclude from the mortgage a parcel of land 400' in depth and 600' in length that included the primary residence and surrounding pond. But where that land is located, and what was intended by reference to the *primary* residence is the issue of the case. Plaintiffs claim that the 400' X 600' parcel is located entirely within the bounds of the 40 rod strip, on the east side of Lake Shore Road and includes the pond and the original home, and also includes the packing shed, machine shed, Quonset hut and fuel pumps. (See Plaintiffs' Exhibit 11, parcel outlined in red). Defendant asserts that the 400' X 600' exception was intended to exclude from the

---

[1] Note-the surveyors retained by the parties agree, as shown in their respective surveys, to the location of the boundary lines to Lots Numbered 152, 153, 154 and 155, that the 40 rod strip is situated in both Lots #154 and #153, and that the 30 rod wide strip of land is situated entirely within Lot #153.

2

mortgage the Plaintiff's new home, (notwithstanding it being situated on the abutting 30 rod strip of land) and pond, (See Defendant's Exhibit H, parcel outlined in green) and that the conveyance to Lionel Labonte of the 40 rod strip included the original home, packing shed, machine shed, Quonset hut and fuel pumps on the east side of the road and also the land and buildings on the west side of the road. Either the original house or the new house could appropriately fit within a 400' X 600' lot also containing the pond.

## DISCUSSION

1. Is the language in the mortgage deed describing the excepted 400'X 600' parcel ambiguous?

To determine where on the face of the earth the 400' X 600' parcel is located, the court must first assess whether the description in the deed is free from ambiguity. The determination of property boundaries as ascertained from a deed is a question of law. *McGeechan v. Sherwood,* 2000 ME 188, ¶ 24. Where the description in a deed of the premises intended to be conveyed is clear and free from ambiguity, it cannot be varied, controlled or contradicted by parol or extrinsic evidence. *Card v. Nickerson,* 150 Me. 89, 92 (1954). Parol evidence is inadmissible to explain, enlarge, vary or control a written instrument. *Id.* If there is no ambiguity, parol evidence, even if admitted, is incompetent in a real action to contradict the terms of a deed. *Sargent v. Coolidge,* 399 A.2d 1333,1345 (Me.1979). However, if the language of the deed is ambiguous, and the intention of the parties is in doubt, the court may then resort to rules of construction and may examine the deed in light of extrinsic circumstances surrounding its execution. *McGeechan,* ¶ 24. In that scenario, the rules of construction require a court to establish boundaries in descending order of control by monuments, courses, distances and quantity. *Id.* The location of monuments on the face of the earth is an issue of fact. *Id.,* ¶ 25. Once an ambiguity is found then extrinsic evidence may be admitted and considered to show the intention of the parties. *Portland Valve, Inc. v. Rockwood Systems Corp.,* 460 A.2d 1383, 1387 (Me. 1983). Contract language is ambiguous when it is reasonably susceptible of different interpretations. *Id.*

The language in question, the exception from the mortgage, reads:

> ***Excepting and Reserving Therefrom*** *the following premises: A certain piece or parcel of land, with buildings thereon, being part of Original Lot No. One Hundred Fifty Three(#153) and/or Original Lot No. One Hundred Fifty Four (#154) and more particularly described as being approximately four hundred(400) feet in depth and six hundred(600) feet in length and consisting of the primary residence and surrounding pond of Gerard and Adrienne Ouellette, husband and wife.*

3

For the proposition that the exception is unambiguous, Plaintiffs presented the testimony of their expert, licensed land surveyor Michael Cyr. Plaintiffs assert that from the wording of the deed there is only one possible location for this 400' X 600' parcel, outlined in red in Plaintiffs' Exhibit 11. As depicted, the lot is shown to abut on its west side for a distance of 600 feet Lake Shore Road, and abut on its north for a distance of 400 feet the Plaintiffs' 30 rod strip on which the new home is situated.(See Plaintiff Exhibit 11). And as depicted, the outlined parcel encompasses the original home, machine shed, packing shed, Quonset hut and fuel pumps.

To support this singular location, Plaintiffs refer to the opening phrase **Excepting and Reserving Therefrom** for the proposition that all of the excepted parcel must come from the 40 rod strip as that is what was being mortgaged. Next, Plaintiff points to the words "*..with buildings thereon..*" to support their position that the exclusion included not just the original home but also any other buildings such as machine shed, packing shed, etc. despite the fact that the exclusion only specifically referenced the *primary residence and surrounding pond.* And as for the word *primary* modifying the word residence, Plaintiffs' expert explained that the dictionary definition of *primary* is *first in time,* and *first in sequence.* Plaintiff's expert testified this was consistent with his knowledge of the Plaintiffs personally, and that growing up in the area he knew that this is where they first lived years ago before constructing the new home. Plaintiff Gerard Ouellette testified similarly, that his understanding of *primary* was *premier, or first.*

The Court has difficulty with Plaintiffs' assertion that there is but one possible location for the 400' X 600' parcel. First of all, there is nothing in the deed that establishes a *point or place of beginning* for the 400' X 600' parcel. There is nothing in the description that indicates any portion of the parcel abuts the road. And there is nothing in the description that indicates it abuts to the north the Plaintiffs' 30 rod strip of land. The description does not indicate if the boundaries are straight, or whether the lot is a rectangle, parallelogram or an irregular shape. Accepting for the moment Plaintiff's position that *primary residence* is the original home located at 484-490 Lake Shore Road, there remain variations where the parcel could be located. For example, its location could be shifted to the south such that it abuts the south line of Lot # 154 and still include the pond.

The Court is also un-persuaded by Plaintiffs' experts' definition of *primary.* The term is not defined in the mortgage document. The common understanding includes a variety of interpretations in addition to first in time, such as first in rank or importance. But also problematic is that Plaintiffs' expert acknowledged he knew from his years growing up and living in the area that the original home at 484-490 Lake Shore Road is where Plaintiffs lived years ago—this is extrinsic evidence, information not known from the strict reading of the deed. In effect, the expert utilized extrinsic knowledge to assist in forming his opinion of the lot's location. However, in attempting to understand what was intended as *primary residence,* it could be the original house, being the first house in time, or it could be the new house which is the actual residence the Plaintiffs were residing in as their principle or main home.

4

Considered further, the description for the exception tends to invite parol evidence. The last phrase of the exception reads *consisting of the primary residence and surrounding pond of Gerard and Adrienne Ouellette, husband and wife.* When attempting to interpret this phrase, a logical question is what was meant by the phrase *primary.* The phrase further indicates the primary residence is that of Gerard and Adrienne Ouellette, so an additional question becomes *what is their primary residence?* If the exception was described by a clearly defined metes and bound description with a sound point and place of beginning, by reference to a survey, or otherwise was locatable without dispute, then the intentions or meaning of the term *primary,* or addressing what residence is the primary residence of Gerard and Adrienne Ouellette would not be critical. But in this case, it is not possible to determine what the term *primary* means, or what it means with respect to Gerard and Adrienne Ouellette, without looking outside the deed at parol evidence.

With respect to the varying interpretations of *primary,* similarities exist to the facts of *Emery v. Webster,* 42 Me. 204 (1856). In that case, at dispute was what was meant in a deed description to the phrase *old channel of Little river stream.* In that case the court stated that the rule of law prohibits parol evidence to contradict or vary terms of a valid written instrument. *Id.* at 206. But in attempting to determine what *old channel* meant, the court wrote "There is nothing in the meaning of the word 'old,' as used in the deed, so positive as to exclude parol evidence, by which to show what the parties thereto intended by it."

However, *Emery v. Watson* must be applied with caution. A few years later in *Madden v. Tucker,* 46 Me. 367 (1859), the court wrote:

> As to the case of *Webster v. Emery,* ..... if it means that a monument, answering in all particulars the call in the deed, is to be removed by parol evidence testimony, and another monument, dissimilar, erected in a different place, then it cannot be law. But, if it means that, where there are two monuments, either of which may answer the call, it becomes a question of fact....

As previously indicated, either the original house or the new house could fit within a 400' X 600' parcel also containing the pond. However, the court recognizes that only the older house is situated in the 40 rod strip, from which the description calls for the parcel to be excepted from. So applying *Emery* and *Madden* can lead to inconsistent results. Like the word *old* in *Emery,* there is nothing in the meaning of the word *primary* that is so positive that its intent can be determined without resorting to parol evidence. And in applying *Madden,* there are two monuments, the original house and the new house, that could meet the definition of primary. But, the Court recognizes only one of those monuments, the original house, satisfies the suggestion the exception come exclusively from the 40 rod strip. So although *Emery* and *Madden* cannot be directly applied to this case, the exercise none the less demonstrates the difficulty in determining the intent of the exception.

The Court also notes that during his testimony, Plaintiffs' expert on more than one occasion used language "I believe they intended..." in reference to his opinion that the lot

5

was to include the original house. This suggests that the expert was attempting to reach an understanding of the Plaintiffs' intentions, which seems improbable without relying upon extrinsic evidence.

In conclusion, the Court cannot find that the description of the 400' X 600' lot consisting of the primary residence and surrounding pond as set forth in the exception from the mortgage is free from ambiguity. The location of the lot is susceptible to more than one interpretation. Accordingly, parol evidence or extrinsic evidence will now be considered to determine the intention of the parties and location of the lot.[2]

      2.Review of facts and circumstances in existence at the time the mortgage was executed.

As previously discussed, if the language of the deed is ambiguous, and the intention of the parties is in doubt, the court may then resort to rules of construction and may examine the deed in light of extrinsic circumstances surrounding its execution. *McGeechan*, ¶ 24. In that scenario, the rules of construction require a court to establish boundaries in descending order of control by monuments, courses, distances and quantity. *Id.* And location of monuments on the face of the earth is an issue of facts. *Id.*, ¶ 25.

A review of the deed itself reveals some elements supportive of Plaintiffs' position. The opening phrase ***Excepting and Reserving Therefrom*** does imply that the excepted parcel was to come from the 40 rod strip. And the language of the exception calls specifically for two objects or structures to be excepted or reserved to Plaintiffs, to wit: *..consisting of the primary residence and surrounding pond of Gerard and Adrienne Ouellette.* The primary residence and surrounding pond can be considered monuments. The pond is undisputedly situated within the 40 rod strip. And the original house is also located within the 40 rod strip being mortgaged, while the new house is located on the adjacent 30 rod strip. So those facts support Plaintiffs' claim that it was there intent to exclude from the mortgage the pond and original house.

However, use of the word *primary* as a modifier of residence leads to differing interpretations. At the time the mortgage was executed, the Plaintiffs were residing in the new house located on the adjacent lot, at 454 Lake Shore Road. They had lived in that residence since 1976. Sometime thereafter they constructed the pond, with a gazebo in the center of the pond. They eventually developed a walkway leading from the new house to the pond and extending across the pond to the gazebo. Although the pond can certainly be accessed from the original house located on the 40 rod strip, the machine shed and fuel pumps are situated between the original house and the pond. It is clear the pond is more closely associated with the new house as opposed to the original house.

---

[2] At trial, parol evidence was admitted but subject to Plaintiffs' ongoing objection based on their assertion the deed was free from ambiguity. Plaintiff's ongoing objection preserved their rights that the parol evidence not be considered by the Court in making the threshold determination of whether or not an ambiguity exists. Such parol evidence was not considered by the Court for this threshold question.

6

As previously suggested the word *primary* has different meanings. It can mean *first in time* or *first in sequence* as Plaintiffs assert. But it also has as its common meaning *first in rank or importance*. The evidence indicates it was an attorney selected by the bank who drafted the description to the mortgage. Although no testimony or evidence was received from the drafting attorney, the loan officer with the bank, Bertrand Boucher did testify. Mr. Boucher testified it was his understanding that the Plaintiffs' objective was to make sure the mortgage being conveyed to the bank did not encumber the home they were residing in (454 Lake Shore Road) and the pond. Per Mr. Boucher, the bank was agreeable to this arrangement. And Mr. Boucher testified that his interpretation of the meaning of the term *primary residence* was the house being principally occupied. In addition, the Court notes that from a real estate transactional viewpoint, *primary residence* is customarily understood to mean the principle home or residence being occupied.[3]

Again, Plaintiff asserts that had it been their intent to except or protect from the mortgage their new home, they would not have needed to identify it in the exception as it is not situated on the 40 rod strip that was being pledged as collateral. But the Court tends to agree with the testimony of Mr. Boucher that it is not uncommon for individuals granting security via a mortgage to err on the side of being overly protective. The mortgage from the Plaintiffs to the bank conveyed a number of pieces of property. If one of their overall objectives was to except, or otherwise protect their homestead, i.e residence and pond, from financial consequences, the safer practice would be to specifically identify in the exception both the residence and pond, even if only the pond was technically situated on the property being pledged.

While discussing the meaning of *primary residence*, how the original home was being used at the time the mortgage was drafted and granted should also be considered. Both Plaintiff Gerard Ouellette and Mr. Boucher testified that at that time, the first floor was being used as an office of the farm, while the upstairs contained an apartment in which Plaintiffs' son was residing. Although a mixed use, the flavor of the use of the original house is more akin to being part of the farming operation. The new house on the adjacent lot however was, and continues to be, the Plaintiffs' principle or main residence. The home at 454 Lake Shore Road has been their residence since 1976. Using its common understanding in real estate parlance, the new home at 454 Lake Shore Road is their primary residence.

It is also important to consider the nature of the financing the Plaintiffs were doing with the Peoples Heritage Bank in 2000. From the evidence it is clear that Plaintiffs had an extensive potato farming operation, that included not only significant farm production acreage and equipment, but also storage and packing operations and trucking operations. In 2000, Plaintiffs were moving the financing of their farm operation from Key Bank to Peoples Heritage Bank. The mortgage the Plaintiffs conveyed to the bank totaled $1,110,000, securing two loans. The mortgage conveyed a security interest in several

---

[3] For example, see 14 M.R.S. §6111 and M.R.Civ.P. 93.

7

acres located on several pieces of property, including the buildings thereon. Plaintiffs also conveyed a security interest in farm equipment and machinery to secure the loans.

This was a sizeable financing relationship. One must assume that the bank would want and demand as much related collateral as possible. Excepting from the mortgage the Plaintiffs' principle residence can certainly be appreciated. But to except from the mortgage key buildings, such as the machine shed, packing shed, Quonset hut and fuel pumps is counter intuitive to what the bank would require to secure its business loans. It is certainly contrary to Mr. Boucher's testimony that the bank took a security interest in the entire farm operation including land, buildings and equipment. And the court notes there are three additional farm structures located immediately across the road on the west side of Lake Shore Road, which Plaintiffs acknowledge were pledged or mortgaged to the bank. Yet, Plaintiffs assert the machine shed, packing shed, Quonset hut and fuel pumps on the east side of the road are part of the excepted parcel. Given the overall nature of the transaction, this seems improbable.

Although the exception does include the phrase ..*with buildings thereon,* it later states ..*and more particularly described as...and consisting of the primary residence and surrounding pond of Gerard and Adrienne Ouellette..*The exception does not specifically list or identify any of the aforementioned farm buildings. The evidence supports a mutual intent to exclude from the mortgage the primary residence and pond, but it does not support an intent to also exclude several buildings integral to the farm operation.

The court also notes that if the 400' X 600' excepted parcel were to be located where Plaintiffs assert, it would also include the driveway to that portion of the 40 rod strip located on the east side of the road. From a technical standpoint, there would still be access. But it again seems unlikely that the parties would agree to an exception that removes the existing means of ingress and egress to the property.

Reviewed collectively and in total, the facts and circumstances in existence at the time the mortgage was executed indicate it was the intent to exclude from the mortgage as their primary residence the Plaintiffs' new home or residence at 454 Lake Shore Road along with the pond.

3. Review of facts and circumstances subsequent to mortgage execution.

There are a number of events that occurred after the mortgage execution that bear some light on Plaintiffs' intentions regarding the excepted parcel.

A few years after the financing arrangement was entered with Peoples Heritage Bank, the Plaintiffs encountered financial problems. In May of 2002, one of the Plaintiffs' creditors, Maine Potato Growers, Inc. obtained an attachment on Plaintiffs' assets. (Plaintiffs' Exhibits 5 and 6). Peoples Heritage Bank also initiated liquidation

8

proceedings. The Plaintiffs ultimately entered bankruptcy proceedings, but the bank obtained relief from stay and foreclosed on the properties encumbered by the mortgage.

Relevant to this case is that per the testimony of Plaintiff Gerard Ouellette, they continued to use the office in the first floor and Plaintiffs' son continued to occupy the upstairs apartment of the original house until the bank took possession pursuant to foreclosure. If they were of the belief the original house was part of the exception, and not part of the mortgaged property, they were entitled to continue to use and occupy the office and apartment. Their voluntary surrender is not consistent with an understanding that the house was excepted from the mortgage, notwithstanding Plaintiffs' excuse that their "hands were tied" by either the bankruptcy or the MPG attachment.

As previously discussed, upon foreclosure in 2006 Peoples Heritage Bank sold the 40 rod strip and related farm buildings to Lionel Labonte. Carl Dumont thereafter acted as Labonte's agent to purchase and help manage the property. The evidence demonstrates hard feelings developed between Gerard Ouellette and Carl Dumont.

In May 2006, Plaintiffs filed forcible entry and detainer actions against Carl Dumont and Lionel Labonte for recovery of personal property. (Defendant's Exhibit M). Also in May 2006, Carl Dumont filed a protection from harassment action against Gerard Ouellette. (Defendant's Exhibit N). And also in 2006, Plaintiff Gerard Ouellette filed a conversion action against Carl Dumont and Patrick Albert, related to personal property. (Defendant's Exhibits X and Y).

In short, each of these actions involved, at least to some respect, Carl Dumont's or Lionel Labonte's use and occupation of the property and buildings at 484-490 Lake Shore Road. This is where Plaintiffs' personal property which was the subject of two of the actions was located. The details and outcome of these separate litigation actions is not directly important. What is relevant and important however is that throughout these actions, Plaintiffs never asserted ownership or rights to possession in either the original house, or machine shed, packing shed or Quonset hut.

As an example, in their FE&D Complaint, Plaintiffs alleged their personal property was located on the real estate purchased by Defendant Labonte at foreclosure sale. (See Paragraghs 5 and 6 of Complaint, Defendant's Exhibit M-1). Similarly, in the protection from harassment action, as part of resolving the matter without the issuance of a protection order, Plaintiffs' counsel wrote to Judge Daigle advising that his client had removed all personal property from the real estate purchased by Labonte, and he had no intentions of reentering the premises for any purpose. (Defendant's Exhibit N-1-j).

Reviewed collectively and in their totality, these post mortgage circumstances and actions indicate the Plaintiffs were not of the belief they had rights of ownership or possession in the original house or farm buildings located at 484-490 Lake Shore Road. This is consistent with the court's prior finding that at the time the mortgage was executed, it was the Plaintiffs' intent to except from the mortgage the new house at 454 Lake Shore

9

Road and the pond, and was not to exclude the original house or any of the farm buildings.

In conclusion, it is the court's finding that the property excepted from the mortgage to Peoples Heritage Bank is that property described and outlined in green on Defendant's Exhibit H. Accordingly, Palintiffs' Complaint for Declaratory Judgment is denied, and judgment is entered for the Defendant, and against the Plaintiffs. It is further ordered that the property excepted from the mortgage granted by the Plaintiffs to Peoples Heritage Bank is that property outlined in green on Defendant's Exhibit H, attached hereto, and more particularly described as being four hundred feet (400') in depth and six hundred feet (600') in length, consisting of the *new house* and pond, and its westerly boundary being along the east side of Lake Shore Road, so called, its northerly boundary being at the southerly boundary of Tax Lot 11-A as shown on said Exhibit H, and its southerly boundary being irregular, as shown on Exhibit H, such that the excepted property includes the *new house* and pond but does not include any of the farm related buildings or the *original house*.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Dated: _____, 2017

_____
Justice, Superior Court

10



# AERIAL PHOTO / DEED SKETCH COMPILATION PREPARED FOR
## ATTORNEY FRANK BEMIS
### [PRESQUE ISLE, MAINE]
## OF THE
## LABONTE INVESTMENT PARCEL
### LAKE SHORE ROAD
## ST. DAVID, MADAWASKA, MAINE
### JANUARY 28, 2016
### SCALE 1"=300'

DEFENDANT'S EXHIBIT

H

N

Original Lot 152

Original Lot 153

TAX LOT 10
TAX LOT 11

GERARD & ADRIENNE OUELLETTE
Vol 343 Pg 291
7-5-1966

30 Rods
495'

TAX LOT 11
TAX LOT 12

Original Lot 153
Original Lot 154

LABONTE INVESTMENT REALTY, LLC
Vol 1862 Pg 154
7-30-2014
LIONEL R. LABONTE

40 Rods
660'

MAP 18
TAX LOT 12      Original Lot 154
TAX LOT 13B     Original Lot 155

Prepared By
Matthew MacDonald
Professional Land Surveyor
135 Star Barn Road, P.O. Box 51
Madawaska, Maine 04756
207-543-6360

EMBOSSED SEAL #1250
AND SIGNATURE
SHOULD APPEAR HERE

2005 aerial photo

TAX LOT 11
Not Included in
2000 Mortgage

Tax Lot 11-A

Primary Residence

Excluded from 2000 Mortgage
Vol 1209 Pg 98
Parcel Seven

POND

Parcel as Described in
COMPLAINT Paragraph Four

House

FARM STORAGE BUILDINGS

TAX LOT 42A
TAX LOT 42
TAX LOT 42A

TL 43
TL 42B
TL 41
TL 42
TL 40
TL 39
TL 38
TL 37
TL 36

LONG LAKE

GREEN ... ROAD

LAKE SHORE ROAD

TAX LOT 2

MAP 34
TAX LOT 42

Included in
2000 Mortgage

0      300      600      900      1200
FEET

| Attorney | Party | Representation Type | Representation Date |
|---|---|---|---|
| ☑ ✉ Smith, William | Adrienne Ouellette - 3... | Retained | 07/27/2015 |
| ☑ ✉ Smith, William | Gerard Ouellette - 1 Pla... | Retained | 07/27/2015 |
| ☑ ✉ Bemis, Francis | Labonte Investment Re... | Retained | 01/29/2016 |